WASHINGTON HOSPITAL
CENTER, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent.

Juanita O. Callier, Intervenor.

No. 97–AA–1107.

District of Columbia Court of Appeals.

Argued Feb. 23, 1999.

Decided Jan. 20, 2000.

William S. Sands, Jr., for petitioner.

Elizabeth F. Pignatello for intervenor. Allen J. Lowe, Washington, DC, was on the brief for intervenor.

Jo Anne Robinson, Principal Deputy Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief for respondent.

Before TERRY, STEADMAN, and SCHWELB, Associate Judges.

TERRY, Associate Judge.

In this workers' compensation case, the Washington Hospital Center ("the Hospital") seeks review of a decision by the

Department of Employment Services ("DOES") granting its employee, Juanita Callier, temporary total disability benefits. On May 13, 1990, Ms. Callier, a nurse in the Hospital's burn trauma unit, lifted an obese patient from a prone to a sitting position on the patient's bed. A few weeks later, during a routine physical examination, Ms. Callier was diagnosed with cystocele,[1] rectocele[2] and femoral hernias. Following her doctor's recommendation, Ms. Callier ceased working on July 30. She underwent a successful surgical repair of the hernias on October 9 and returned to work on January 12, 1991. A DOES hearing examiner found that Ms. Callier's condition was causally related to the May 13 lifting incident and awarded her temporary total disability benefits for the time that she was unable to work. The Director of DOES affirmed the examiner's decision, citing a lack of evidence "that heavy lifting could not aggravate [Ms. Callier's] condition." Before this court the Hospital claims (1) that the examiner misapplied the statutory presumption of compensability, (2) that there was substantial evidence introduced to rebut the presumption, and (3) that the examiner's finding of a causal relationship between Ms. Callier's condition and her employment was not supported by substantial evidence. The Hospital also contends that the Director applied the wrong standard of review with respect to the examiner's finding of causation. By requiring it to prove that Ms. Callier's condition "could not" have been caused by the work-related incident, the Hospital maintains, the Director imposed too heavy a burden on it to rebut the statutory presumption of compensability. We agree with the latter argument, and therefore we remand the case to the Di-

rector with instructions to reconsider the examiner's decision and, in doing so, to apply the correct standard of review.

I

On March 20, 1981, Ms. Callier began work as a registered nurse in the Hospital's burn trauma unit. Her duties required her regularly to engage in heavy lifting in order to move patients who were partially or totally immobilized as a result of their injuries. On May 13, 1990, Ms. Callier lifted a patient weighing more than 350 pounds from a prone to a sitting position on the patient's bed.[3] Immediately afterwards, Ms. Callier began to experience pain and discomfort in her lower back and abdomen. At the DOES hearing, she said it felt "like something dropped in my lower abdomen that shook me." She reported the injury to her supervisor the next day.

During her annual physical a month or so later, Ms. Callier complained to her physician, Dr. Melvin Kordon, that she felt discomfort in her back and lower abdominal area. After examining her, Dr. Kordon diagnosed her as suffering from rectocele, cystocele, and femoral[4] hernias. Dr. Kordon referred Ms. Callier to Dr. Kline Price, a gynecologist, who confirmed the diagnosis of multiple hernias and recommended surgical repair. Dr. Price told Ms. Callier that continuing to work would only make her condition worse, so she stopped working at the Hospital on July 30.

On October 9, 1990, Ms. Callier underwent surgery to repair her hernias. The surgery, performed by Drs. Thomas Goodridge,[5] Eric Oristian, and Joseph Bloom,

---

1. A cystocele is a herniation of the bladder into the vagina.

2. A rectocele is a herniation of the rectum into the vagina.

3. Ms. Callier had worked with this patient, who had burns covering almost fifty percent of her body, for several weeks prior to this incident.

4. The initial diagnosis of a femoral hernia was apparently erroneous, since the post-operative report describes an inguinal, rather than femoral, hernia repair.

5. Before the surgery, Ms. Callier sought a second opinion from Dr. Goodridge, who also confirmed the diagnosis and recommended that the hernias be surgically repaired.

was completely successful. Ms. Callier resumed full-time employment at the Hospital on January 12, 1991, as soon as all three surgeons cleared her to return to work. Since then, she has been able to perform all of her employment duties without any restrictions.

At the compensation hearing before the DOES hearing examiner, the only issue was whether Ms. Callier's condition was causally related to the May 13 lifting incident at work. The parties stipulated that Ms. Callier had a pre-existing rectocele and cystocele at the time of that incident.[6] Ms. Callier's theory was that her pre-existing condition was aggravated by repetitive heavy lifting over a period of nine years prior to May of 1990, and that the May 13 incident was "the straw that broke the camel's back," further aggravating the condition to the point that it required surgical correction.

The Hospital agreed that the statutory presumption of compensability had been satisfied, but sought to rebut the presumption through the testimony of Dr. Donald Sewell. On the basis of his physical examination of Ms. Callier in September 1991, as well as his review of her entire medical history, Dr. Sewell concluded in his written report "with a reasonable degree of medical certainty that a single lifting episode on May 13, 1990 was *not* the cause of this patient's cystocele, rectocele, or femoral hernia" (emphasis in original). Dr. Sewell testified at the hearing that Ms. Callier's condition could have been caused by various factors, including the natural weakness of her tissue, trauma during childbirth, or anything that might have increased the pressure inside her abdomen, such as chronic coughing, constipation, or regular heavy lifting. After reviewing her medical records, Dr. Sewell stated that Ms. Callier's condition appeared to have developed gradually over the course of a nine-year

period beginning in 1981. He found no evidence, either in the medical records or in his examination, of "an acute laceration or tear of supporting tissues" which would indicate that the hernias were caused by a single traumatic incident. He also noted that Ms. Callier had a history of chronic constipation, and speculated that this might have been a contributing factor to the gradual aggravation of her condition. In conclusion, Dr. Sewell stated that "since the cystocele [was] there as of May 12, 1989 [*sic*], I can't say that an acute lifting episode on May 13, 1990, caused it. It was already there."

On cross-examination, Dr. Sewell conceded that repetitive heavy lifting over time would aggravate a condition such as Ms. Callier's to the point that it would eventually require surgery. The doctor also admitted that he had no knowledge of the severity of Ms. Callier's condition in May of 1990, before she lifted the heavy patient, as compared with June of 1990, after the lifting incident. He continued to insist, nevertheless, that the acute lifting episode on May 13 "did not cause [Ms. Callier's] condition to become symptomatic to the nature that it was causation on that day . . . ."

When asked about the possibility that the lifting incident might have incrementally aggravated Ms. Callier's pre-existing condition to the point that it required surgery, Dr. Sewell replied:

No, this would go on gradually, that is, as the condition became more aggravated, the cystocele became at a [*sic*] much greater degree than it was, and the rectocele increased, and she would have increasing problems with urination, she would start urinating on herself, and as it eventually became more aggravated, that condition would become worse. The same thing with the stool evacuation, that would gradually increase and

6. In 1979, following the birth of her second child, Ms. Callier had surgery to repair a cystocele and a rectocele. There was evidence in the medical records that this prob-

lem had recurred before 1990. In May of 1989, for example, Dr. Kordon noted the presence of a cystocele during Ms. Callier's annual physical.

increase, and these people with this condition tolerate it for a point ... but it doesn't get better, it just continues on, and *at some point* in the symptom process they get tired of it, and they go to someone and say, can you help me, and that's when it gets corrected. [Emphasis added.]

Dr. Sewell explained that the exact point at which a condition such as Ms. Callier's might require surgery would depend on the individual patient: "however far it goes would depend on how far it's allowed to go." When Ms. Callier's attorney pressed Dr. Sewell for further explanation, he finally stated, "I'm telling you that heavy lifting can aggravate this condition. Now, whether she goes to see a doctor is based upon the patient."

The hearing examiner found that Dr. Sewell's testimony supplied "the only definitive medical opinion" of the causal relationship between Ms. Callier's condition and the work-related incident.[7] The examiner noted that, while Dr. Sewell stated that "claimant's herniations were not caused by the May 13, 1990, work incident," he also testified that "heavy lifting or straining could aggravate these conditions to a point of requiring surgical correction." The examiner concluded, "As claimant's aggravation resulted from [her] work activities, the aggravation arose out of and in the course of her employment." Further, citing Ms. Callier's testimony that she "felt something drop" in her abdomen upon lifting the patient, as well as the absence of any evidence of an inguinal hernia before May 13, 1990, the examiner concluded that the inguinal hernia was also work-related.

The Director of DOES affirmed the decision of the hearing examiner, emphasizing that "there is no evidence, in the rec-

ord, from any physician that heavy lifting *could not* aggravate claimant's condition" (emphasis in original). The Director also cited Dr. Goodridge's opinion that Ms. Callier's condition was apparently caused by the May 13 lifting incident,[8] as well as Dr. Sewell's testimony that "a hernia could be caused by a heavy lifting episode, because that is a tissue tearing."

## II

### A. The Presumption of Compensability

Under the District of Columbia Workers' Compensation Act ("WCA"), once an employee offers evidence demonstrating that an injury was potentially caused or aggravated by work-related activity, a presumption arises that the injury is work-related and therefore compensable under the Act. *See* D.C.Code § 36–321(1). This presumption serves "to effectuate the humanitarian purpose of the statute [and] reflects a 'strong legislative policy favoring awards in arguable cases.'" *Ferreira v. District of Columbia Dep't of Employment Services*, 531 A.2d 651, 655 (D.C.1987) ("*Ferreira I*") (citing *Wheatley v. Adler*, 132 U.S.App.D.C. 177, 183, 407 F.2d 307, 313 (1968) (en banc)); *accord, e.g., Brown v. District of Columbia Dep't of Employment Services*, 700 A.2d 787, 791 (D.C. 1997). In order to benefit from the presumption, an employee need only present "some evidence" of two things: (1) a disability, and (2) "a work-related event, activity, or requirement which has the *potential* of resulting in or contributing to the ... disability." *Ferreira I*, 531 A.2d at 655 (emphasis in original); *accord, e.g., Parodi v. District of Columbia Dep't of Employment Services*, 560 A.2d 524, 526 (D.C.1989). "The presumption then operates to establish a causal connection between the disability and the work-related

---

7. The examiner rejected the opinion of Dr. Goodridge on this question, despite the fact that he was one of the operating physicians, because his knowledge of Ms. Callier's medical history was "limited."

8. In a letter written shortly after the surgery, Dr. Goodridge stated that the hernias were "apparently caused by the May 13 lifting incident." Though citing this opinion in support of her decision, the Director noted that it was rejected by the hearing examiner.

event, activity, or requirement." *Ferreira I*, 531 A.2d at 655; *accord, e.g., Davis–Dodson v. District of Columbia Dep't of Employment Services*, 697 A.2d 1214, 1217 (D.C.1997).

The Hospital argues that the hearing examiner failed to discuss the applicability of the statutory presumption, and therefore failed to comply with the principle that administrative decisions in contested cases "must state findings of fact on each material contested factual issue." *Perkins v. District of Columbia Dep't of Employment Services*, 482 A.2d 401, 402 (D.C. 1984); *accord, e .g., Spartin v. District of Columbia Dep't of Employment Services*, 584 A.2d 564, 572 (D.C.1990). We do not agree. First, in its closing argument at the compensation hearing, the Hospital conceded that the statutory presumption had been satisfied; hence the applicability of the statutory presumption was not a "material contested" issue in this case. Indeed, the only issue presented to the examiner was whether the employer had introduced sufficient evidence to rebut the presumption of a causal relationship between the aggravation of Ms. Callier's condition and the work-related incident.

■ The basic flaw in the Hospital's argument is its assumption that a compensation order must contain certain magic words in order to demonstrate that the examiner followed the statutory procedures. We have never held hearing examiners to such an exacting standard, and we see no reason to do so now. The relevant question is not whether the examiner said he applied the statutory presumption, but whether in fact he properly did so. From the record before us, we conclude that he did.

■ It is well established in this jurisdiction that a disability resulting from the aggravation of a pre-existing condition is compensable under the WCA. *See, e.g., Metropolitan Poultry v. District of Columbia Dep't of Employment Services*, 706 A.2d 33, 35 (D.C.1998); *Baker v. District of Columbia Dep't of Employment Services*, 611 A.2d 548, 550 (D.C.1992); *Capital Hilton Hotel v. District of Columbia Dep't of Employment Services*, 565 A.2d 981 (D.C.1989); *Ferreira I*, 531 A.2d at 660; *Wheatley*, 132 U.S.App.D.C. at 182, 407 F.2d at 312. It is also settled that the presumption of compensability applies when there is a dispute over the causal nexus between the employment and the "disabling aggravated condition." *Whittaker v. District of Columbia Dep't of Employment Services*, 668 A.2d 844, 846–847 (D.C.1995). In a case such as this one, it is immaterial that other factors, unrelated to the employee's work duties, may have contributed in some way to the aggravation of her condition. Rather, compensation is warranted so long as Ms. Callier's disability arose, at least in part, from her work-related activities. *Id.*

■ Ms. Callier testified that when she lifted the patient on May 13, 1990, she "felt something drop" in her abdomen, and that her condition dramatically worsened following this incident. This testimony, even standing alone, might well have been sufficient to invoke the statutory presumption of causation. In *International Security Corp. v. McQueen*, 497 A.2d 1076, 1080 (D.C.1985), a personal injury case, we held that the plaintiff's testimony that she felt no pain before the incident, then began to experience pain after the incident, was sufficient to establish causation. There appears to be no reason why the holding of *McQueen* would not apply on similar facts in a workers' compensation case. But Ms. Callier's testimony was not the only evidence which supported her claim. There was also an abundance of objective medical evidence documenting the symptoms she experienced after the lifting incident. While Dr. Sewell was of the opinion that these symptoms were not caused by the lifting of the patient, the examiner was free to reject that opinion, particularly when the doctor also testified that he had no knowledge of Ms. Callier's medical con-

dition immediately before she lifted the patient on May 13.

Though the compensation order itself does not contain the word "presumption," it is clear from a reasonable reading of the order that the hearing examiner correctly applied the statutory presumption of compensability. Since there is ample evidence in the record to support the examiner's decision to do so, we reject the Hospital's argument on this point.

### B. *The Examiner's Findings*

The Hospital next argues that the examiner's finding of a causal relationship between the work-related lifting incident and Ms. Callier's disability was not supported by substantial evidence, and that the Director therefore erred in not reversing the compensation order. Although, for reasons discussed hereafter in part III, we remand this case for reconsideration by the Director, we cannot agree with the Hospital's contention that the Director should have reversed the hearing examiner's decision on this ground.

Notwithstanding the statutory presumption of compensability, the burden ultimately falls on the claimant to show by a preponderance of the evidence that his or her disability was caused by a work-related injury. *See, e.g., Stewart v. District of Columbia Dep't of Employment Services,* 606 A.2d 1350, 1351 (D.C.1992). Thus the presumption may be rebutted if the employer proves "by substantial evidence that the disability did not arise out of and in the course of employment." *Baker,* 611 A.2d at 550; *see also Ferreira v. District of Columbia Dep't of Employment Services,* 667 A.2d 310, 312–313 (D.C. 1995) (*"Ferreira II"*). The evidence offered in rebuttal must be "specific and comprehensive enough to sever the potential connection between" the disability and the work-related event. *Ferreira I,* 531 A.2d at 655 (quoting *Swinton v. J. Frank Kelly, Inc.,* 180 U.S.App.D.C. 216, 224, 554 F.2d 1075, 1083, *cert. denied,* 429 U.S. 820,

97 S.Ct. 67, 50 L.Ed.2d 81 (1976)); *accord, e.g., Parodi,* 560 A.2d at 526.

The only evidence offered by the Hospital to rebut the presumption of compensability was the testimony of Dr. Sewell, who maintained that Ms. Callier's condition was aggravated gradually, over an extended period of time, and that her disability was not attributable to a single incident. According to Dr. Sewell, if Ms. Callier's condition had been aggravated by the lifting episode on May 13, the lifting would have caused a traumatic tearing of the surrounding tissues, whereas aggravation resulting from repetitive lifting over time would be manifested by a gradual stretching and loosening of those tissues. From his review of the medical records, Dr. Sewell concluded that no tissue tearing had occurred.

On cross-examination, Dr. Sewell was questioned extensively about the possibility that Ms. Callier's condition might have been slowly aggravated over an extended period of time, but did not progress to the point of requiring surgery until it was further aggravated on May 13 when she lifted an extremely heavy patient, straining her back and causing something to "drop" in her lower abdomen. In a contentious exchange, Dr. Sewell steadfastly refused to make this concession. Paradoxically, however, he did acknowledge that Ms. Callier's condition would have been aggravated by heavy lifting, and that "at some point" during this gradual process her symptoms would become so severe that she would seek medical attention. The doctor tenaciously clung to his opinion that the May 13 lifting incident was not the "point" at which this happened, but he was unable to offer any explanation for that opinion.

Although the compensation order is not as clear as one might wish, the examiner apparently—and permissibly—accepted the greater part of Dr. Sewell's testimony, but rejected his ultimate conclusion. Given the logical inconsistencies in Dr. Sewell's opinion, we cannot say that this decision was erroneous.

Contrary to Dr. Sewell's belief (and the Hospital's contention), the success of Ms. Callier's claim was not dependent on the existence or non-existence of evidence of torn tissue,[9] which would indicate a single traumatic event. As the examiner implicitly recognized, the theory advanced by Ms. Callier was entirely consistent with Dr. Sewell's testimony. Her claim was that her pre-existing condition was gradually aggravated over the nine-year period during which she worked for the Hospital until it finally reached the point of requiring surgery. Dr. Sewell testified that Ms. Callier's work-related lifting activities, not just the incident on May 13 but her other duties as well, would have gradually aggravated her condition until it eventually reached "some point" at which she would need surgery. Since the doctor admitted that he had no basis for comparing the severity of Ms. Callier's condition before and after the lifting incident, the examiner could reasonably conclude that the doctor's opinion that the lifting was not the cause of her disability was ultimately based on nothing more than speculation. There was no reason for the examiner to be bound by the doctor's puzzling refusal to acknowledge the logical conclusion of his own testimony.

▮ Additionally, we hold that the Hospital's challenge to the examiner's finding of a causal relationship between the lifting incident and the inguinal hernia is without merit. As the examiner recognized, there was no evidence that Ms. Callier had an inguinal hernia before May 13, 1990, and the strain experienced by Ms. Callier on that date certainly had the potential of causing such a hernia. Thus the statutory presumption of compensability was properly triggered, and the Hospital failed to rebut it. *See Parodi*, 560 A.2d at 525–526 (evidence was sufficient to establish the work-relatedness of employee's hernia discovered six months after a lifting

incident at work). In order to defeat Ms. Callier's claim, the Hospital would have had to show that Ms. Callier's "present condition was solely the natural result of her pre-existing condition," or of other causes unrelated to her employment. *Davis–Dodson*, 697 A.2d at 1219 (claimant's pre-existing degenerative lumbar disc disease aggravated by prolonged sitting at desk); *cf. Ferreira II*, 667 A.2d at 311 (compensation denied upon finding that claimant's condition had been steadily deteriorating for four years prior to the commencement of employment, and six years prior to the alleged traumatic incident).

### III

▮ "[I]t is the Director's final decision, not the examiner's, which may be reviewed in this court." *St. Clair v. District of Columbia Dep't of Employment Services*, 658 A.2d 1040, 1044 (D.C.1995) (citations and footnote omitted). Therefore, if the Director's decision is deficient, we are not at liberty to cure that deficiency by conducting our own independent review of the examiner's order, for to do so would impermissibly bypass a crucial step in the statutorily prescribed procedure. The Director's task when reviewing an order of a hearing examiner is to determine whether that order is supported by substantial evidence. We then review the Director's decision.

▮ In this case we do not agree with the Hospital that the Director's decision affirming the examiner's compensation order was necessarily erroneous, and thus we do not reverse and overturn the compensation order. Our review, however, convinces us that the Director did not apply the correct standard of review. The Director's stated reason for upholding the examiner's decision was that the Hospital had failed to demonstrate that Ms. Callier's disability "could not" have been caused by the work-related lifting incident.

---

9. Dr. Sewell testified, after reviewing Ms. Callier's medical records, that there was no tearing of the tissue. Our examination of those records, however, reveals only that they are silent on the question of whether or not any tissue was torn.

That is too heavy a burden to impose on the employer. We therefore remand the case to the Director with instructions to review the compensation order *de novo* and, in doing so, to apply the correct "substantial evidence" standard.

Beyond stating that substantial evidence means "more than a mere scintilla," we have declined to establish a precise quantum of proof needed to meet the substantial evidence threshold. In requiring proof that Ms. Callier's disability "could not" have been caused by the lifting incident, the Director placed on the Hospital a burden that has no basis either in the workers' compensation statute itself or in prior decisions of this court. Our cases—*Ferreira I,* for example—require an employer only to offer "substantial evidence" to rebut the statutory presumption of compensability, not to disprove causality with absolute certainty. *See* 531 A.2d at 655. As the Hospital compellingly argues in its brief, medical opinion seldom reaches that degree of certainty because medicine itself "is not an absolute science." The record in this very case illustrates the Hospital's argument. Although Dr. Sewell was a difficult witness whose testimony was, at times, internally illogical, he held steadfastly to his opinion, which he offered with a reasonable degree of medical certainty, that the lifting incident was not the cause of Ms. Callier's disability. Nevertheless, as we have concluded in part II of this opinion, the rest of his testimony contained substantial evidence to support a finding that indeed it was the cause, and the examiner so found.

 The statutory presumption makes it easy for an employee to establish that a disability is work-related and, as we have often said, favors awards in "arguable cases." *Id.* (citations omitted). That presumption, however, is not so strong as to require the employer to prove that causation is *impossible* in order to rebut it. The standard applied by the Director in this case did just that. We therefore reverse the final DOES decision and remand the case to the Director with instructions to reconsider the examiner's compensation order, and to apply the correct standard of review when doing so.

*Reversed and remanded.*