SAFEWAY STORES, INC., Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent,

and

Jeffrey Watson, Intervenor.

No. 01–AA–1117.

District of Columbia Court of Appeals.

Argued June 25, 2002.

Decided Sept. 26, 2002.

Alexander Francuzenko, Rockville, MD, for petitioner.

Steven C. Rohan for intevenor.

Robert R. Rigsby, Corporation Counsel at the time, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of a brief, for respondent.

Before FARRELL, RUIZ and GLICKMAN, Associate Judges.

RUIZ, Associate Judge:

Safeway Stores, Inc. petitions for review of a decision by the Director of the D.C. Department of Employment Services (DOES), which affirmed a compensation order awarding workers' compensation benefits to Jeffrey Watson. Safeway contends that the hearing examiner and the Director erred in concluding that Safeway had failed to produce sufficient evidence to overcome the presumption of compensability, where it had presented two doctors'

medical reports which disputed the causal relationship between a September 1998 work-related injury to Watson's left knee and a later secondary disability to his right knee. Additionally, Safeway argues that the hearing examiner's determination that Watson suffered an eighty percent permanent partial impairment of his left lower extremity as a result of the work-related injury to his left knee was not supported by substantial evidence and, in addition, should be discounted by a "credit" reflecting Watson's prior permanent impairment. We conclude that the Director and the hearing examiner erred in placing too high a burden upon the employer to rebut the presumption of compensability with respect to the injury to the right knee and remand to the agency on that ground, but we affirm the agency's decision with respect to the disability resulting from his left knee injury.

## I.

Watson first injured his left knee in 1990 while working for a different employer when stairs he was climbing gave way. He had arthroscopic surgery on the left knee, and later, an anterior cruciate ligament reconstruction procedure on the same knee. In August of 1997, Watson injured both his left and right knees while playing basketball.[1] Dr. Hamid Quraishi, who treated him for these injuries, noted tenderness in Watson's right knee and opined that a "McMurray's sign for a torn meniscus [was] positive." Dr. Quraishi informed Watson that he was "developing moderate degenerative changes in the left

knee and things will progress," and that nothing could be done to prevent this progression. After an MRI of Watson's left knee, Dr. Quraishi performed a second arthroscopic procedure and then prescribed physical therapy rehabilitation. He released Watson back to work full-time on December 15, 1997.

On September 24, 1998, while working as a seafood deli clerk at the Safeway store in Georgetown, Watson again injured his left knee, as well as his lower back, while removing boxes of frozen salmon from a freezer shelf as several of the boxes toppled and struck his knee. This time, Watson was treated by Dr. William Dorn, who performed a third arthroscopic surgery on Watson's left knee in March of 1999, and informed him that he could continue to expect symptoms and that he would eventually require a complete knee replacement.[2]

Watson claimed temporary total disability benefits from October 16, 1998 through May 1999 for the left knee and back injuries. Safeway contested the compensability of the left knee injury, claiming that it resulted entirely from a pre-existing condition. On June 25, 1999, after a hearing, a DOES hearing examiner issued a compensation order awarding Watson the benefits he had sought. Safeway did not appeal from this order.

Sometime thereafter, Watson filed a second claim for temporary total disability benefits from July 28, 1999, through September 3, 1999, for problems with his right knee stemming from overuse of his right

---

**1.** Medical records from Prince George's Hospital Center also indicated that Watson hurt his left knee, back and neck on August 8, 1996, when a car struck the driver's side door of his vehicle as he was exiting from it. He was diagnosed with a strain to the left leg. Safeway claims Watson received treatment to his left knee for a second automobile accident that allegedly occurred on May 10, 1996, but

the records for that date do not indicate any injury to or treatment of his left knee.

**2.** Watson told Dr. Hampton Jackson (a partner in Dr. Dorn's practice who treated the related back injury) that he had "a previous left knee injury in 1993," and had surgery but "had no problems with his knee at all" prior to the September 1998 incident.

leg to compensate for the injured left knee. He also sought permanent partial disability benefits for the substantial impairment of his left knee. Safeway again contested compensation, this time on the grounds that any disability to the right knee resulted entirely from a pre-existing condition, and that the impairment of Watson's left knee was not as great as he claimed. At the hearing on his claim, Watson testified that in March or April of 1999, he began having problems with his right knee swelling and locking up on him. He also presented medical reports from his treating physician, Dr. Dorn, who observed that Watson was "experiencing secondary trauma to the right knee as a result of placing additional pressure on the right knee to protect the injured left knee." More specifically, Dr. Dorn opined that Watson suffered from "internal derangement of the right knee with tears of the medial meniscus, effusion, strain of the medial collateral ligament and degenerative changes," and concluded that he had secondary strains to his right knee resulting from the work-related injury to his left knee. Dr. Dorn also conducted several subsequent examinations in which he consistently diagnosed a secondary strain to the right knee. With respect to the left knee, he concluded that Watson had "extensive degenerative/traumatic arthritis of the left knee and will require total joint replacement," and that he had an "80 percent impairment of the lower left extremity" based on the American Medical Association Guidelines for the Evaluation of Permanent Impairment.

In rebuttal, Safeway produced documentation of Watson's extensive past medical history,[3] testimony from Watson's work supervisor that Watson was able to perform his duties during the period in question, and medical reports by Dr. Marc Danzinger, who had conducted an independent medical evaluation on Safeway's behalf. After reciting Watson's significant past medical history, Dr. Danzinger's report opined:

At this time, the diagnosis for his right knee is a patellofemoral syndrome. He also has a questionable medial meniscal tear seen on the MRI. I find absolutely no evidence of causal relationship between the symptoms he is having to his right knee and the 9/24/98 work injury. I can even go a step further and explain that I find no causal relationship between his current symptomology and osteoarthritis in the left knee and the 9/24/98 accident.... Any claims by Dr. Dorn that this transfer of weight to the right knee causing his current symptoms in no way can be correlated to just the incident of 9/24/98 and predispose him. I find it quite a stretch to claim that a medial meniscal tear could have occurred in the right knee without an antecedent injury just because of transfer of weight and stress to the right knee. The current patellofemoral syndrome could be caused by transfer of weight, but I find this in no way related to the 9/24/98 accident and find it much more related to any symptoms he may have

3. Watson's counsel objected to Employer's Exhibit 4—Dr. Quraishi's reports with respect to Watson's previous injury to the left knee—on the ground that it was incomplete, but withdrew that objection when he was able to introduce additional documentation. During the course of the hearing, the examiner inexplicably stated that the request to admit Exhibit 4 was withdrawn. Safeway's counsel did not object or point out the examiner's omission of Exhibit 4, and the compensation

order does not refer to this particular exhibit. With respect to Employer's Exhibits 5 through 8, which consisted of medical records produced from four hospitals, Watson's counsel claimed that most of the medical records were not relevant. At the close of the hearing, the examiner stated that "Employer's Exhibits 5 through 8 ruling was reserved. I will admit those exhibits and consider them with the body of other evidence submitted and presented at this hearing."

from his long-standing osteoarthristis which is part of the degenerative process and related way back to his original injury of 1990. Thus I believe the current right knee problems the patient is having would have developed regardless of the 9/24 left knee injury because of his previous history.

After conducting a second examination Dr. Danzinger again found "no correlation between the claim by Dr. Dorn that transferring weight caused his [right knee] problems and the findings on the MRI...." Although Dr. Danzinger agreed with Dr. Dorn that Watson had reached maximum medical improvement of his left knee, he apportioned seventy-five percent of the disability to pre-September 1998 injuries and only twenty-five percent to the September 1998 injury.

Watson was given leave by the hearing examiner to file supplemental medical treatment information, including an evaluation by Dr. Joel Fechter, who concluded that "as a result of the alteration in the patient's gait due to his [September 1998] work injury, he subsequently developed right knee pain with an MRI SCAN revealing evidence of meniscal tear." Based on his examination, Dr. Fechter determined that Watson had a sixty-nine percent impairment to the lower left extremity.

In the compensation order granting Watson's claim for benefits, the examiner first noted that the issue of whether Watson's left knee injury arose out of and in the course of employment had been resolved by the previous (1999) compensation order, which Safeway had not appealed. Addressing the right knee injury, the examiner concluded that the threshold requirement to raise the statutory presumption of compensability was met by Watson's testimony that he had no symptoms in his right knee before September 24, 1998, and the medical reports of Dr. Dorn.

The examiner then considered whether Safeway had presented evidence sufficient to rebut the presumption and determined that it had failed to do so, because Dr. Danzinger acknowledged that the "current patellofemoral syndrome could be caused by a transfer of weight." Because Dr. Danzinger also opined that he found "no evidence of causal relationship between the symptoms he is having to his right knee and the 9/24/98 work injury," the examiner found "the opinions of Dr. Danzinger ... [to be] contradictory to the extent that he concedes that [the right knee disability] could have occurred consistent with the manner alleged."

Addressing the left knee injury, the examiner discussed the nature and extent of Watson's disability, relying on Watson's testimony and Dr. Dorn's medical opinion that he had reached a permanent and stationary condition from the work injury and had an eighty percent impairment of the lower left extremity. The examiner rejected the "voluminous" medical records submitted by the employer, finding that there was "no evidence that any of them address or document an injury, complaints, symptoms, or treatment of the claimant's right knee or lower extremity." The examiner also accorded greater weight to Dr. Dorn's opinion based on his status as Watson's treating physician.

The Director affirmed the compensation order, rejecting Safeway's claim that it had produced sufficient evidence to rebut the presumption of compensability, and agreeing with the examiner's statement that Dr. Danzinger had contradicted himself by acknowledging that the injury to the right knee could have occurred in the manner alleged. The Director also found Dr. Quraishi's evaluations of prior injuries insufficient to overcome the presumption of compensability because Watson was seen by that doctor a year before the injury for

which benefits were claimed and never was given any definitive diagnosis or treatment to his right knee before the injury that occurred at the Safeway store. Finally, as to the extent of impairment to Watson's left knee, the Director concluded that the examiner did not err in crediting Dr. Dorn's opinion which was based on fifteen visits over twenty months, surgery he performed, and recognized medical guidelines.

## II.

### A. Standard of Review

■ "It is the Director's final decision, not the examiner's, which may be reviewed in this court." *Washington Hosp. Ctr. (Callier) v. District of Columbia Dep't of Employment Servs.*, 744 A.2d 992, 999 (D.C.2000) (quoting *St. Clair v. District of Columbia Dep't of Employment Servs.*, 658 A.2d 1040, 1044 (D.C.1995) (citations and footnote omitted)). We review the Director's legal rulings *de novo, see Clark v. District of Columbia Dep't of Employment Servs.*, 772 A.2d 198, 201–02 (D.C.2001), but otherwise defer to the Director's determination so long as it rationally flows from the facts and is supported by substantial evidence on the record, *see Washington Metropolitan Area Transit Authority (WMATA) v. District of Columbia Dep't of Employment Servs.*, 683 A.2d 470, 472 (D.C.1996). In this case, the Director's decision that the employer's evidence was insufficient to rebut the presumption of compensability presents a question of law—what constitutes sufficient evidence—that we review *de novo*, which in turn depends on an issue of interpretation of the evidence, as to which we defer.

### B. Rebuttal of the Statutory Presumption

■ When an employee presents evidence demonstrating that an injury was potentially caused or aggravated by a work-related activity, "a presumption arises that the injury is work-related and therefore compensable" under the Workers' Compensation Act. *Washington Hosp. Ctr.*, 744 A.2d at 996 (citing D.C.Code § 36–321(1) (1998), recodified as D.C.Code § 32–1521 (2001)). "To rebut the presumption the employer must show by substantial evidence that the disability did not arise out of and in the course of the employment." *Waugh v. District of Columbia Dep't of Employment Servs.*, 786 A.2d 595, 600 (D.C.2001) (quoting *Baker v. District of Columbia Dep't of Employment Servs.*, 611 A.2d 548, 551 (D.C.1992)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Davis–Dodson v. District of Columbia Dep't of Employment Servs.*, 697 A.2d 1214, 1218 (D.C.1997) (citations and internal quotations omitted), and it must be " 'specific and comprehensive enough to sever the potential connection' between the disability and the work-related event." *Waugh*, 786 A.2d at 600 (quoting *Ferreira v. District of Columbia Dep't of Employment Servs.*, 531 A.2d 651, 655 (D.C.1987)); *see also Whittaker v. District of Columbia Dep't of Employment Servs.*, 668 A.2d 844, 847 (D.C.1995) (presumption of compensability cannot be overcome "by some isolated evidence").

■ There is no question that Watson made an initial showing of medical evidence sufficient to invoke the presumption of compensability as he presented Dr. Dorn's reports that his right knee disability was related to the September 1998 work injury. The only issue is whether Dr. Danzinger's report constituted substantial evidence specific and comprehensive enough to sever the presumed causal connection. Safeway asserts that the hearing examiner erred in characterizing Dr. Danzinger's report as contradictory, when in

fact it "clearly and unequivocally indicates that Dr. Danzinger did not believe that claimant's right knee problems are causally related to his 9/24/98 injury." Safeway claims this opinion was sufficient to rebut the presumption. We agree that it was.[4]

Although "we have declined to establish a precise quantum of proof needed to meet the substantial evidence threshold," we have emphasized that "[o]ur cases ... require an employer only to offer 'substantial evidence' to rebut the statutory presumption, not to disprove causality with an absolute certainty." *Washington Hosp. Ctr.*, 744 A.2d at 1000. Moreover, we have indicated that the statutory presumption "is not so strong as to require the employer to prove causation is *impossible* in order to rebut it." *Id.* Thus, we have reversed the Director's decision for imposing too heavy a burden on the employer by requiring that the employer demonstrate that the employee's injury "could not" have been caused by the work-related incident. *Id.* at 999–1000.

Dr. Danzinger determined that Watson's right knee was "minimally symptomatic ... other than the patellofemoral joint." He diagnosed Watson with patellofemoral syndrome in his right knee and observed the presence of a "questionable medial meniscal tear." Dr. Danzinger found "absolutely no evidence of causal relationship" between the right knee injury and the work injury to the left knee. He did acknowledge that the patellofemoral syndrome "could be" caused by transfer of weight, but clearly stated that it was "in no way related to" the work injury and found the syndrome "much more related" to Watson's "longstanding osteoarthritis."

As for the "questionable" meniscal tear, Dr. Danzinger expressed scepticism concerning Dr. Dorn's claim that it could have resulted from a transfer of weight and without an antecedent injury.

■ Based on Dr. Danzinger's extensive diagnosis, which provided a detailed explanation supporting his conclusions, we cannot agree with the Director's decision that it was insufficient to rebut the presumption of compensability. Although we defer to the Director's characterization of Dr. Danzinger's opinion as "inconsistent" in that Dr. Danzinger observed that the patellofemoral syndrome in Watson's right knee had the potential to be caused by transfer of weight, we note that the inconsistency, if any, was minor, as the doctor unequivocally stated his opinion that the work injury was not the precipitating cause in this case, pointing to "long-standing osteoarthritis" and the "original injury of 1990" to the left knee. Similarly, Dr. Danzinger's opinion regarding the cause of the possible meniscal tear in Watson's right knee cast doubt on Dr. Dorn's explanation for that injury. In dismissing Dr. Danzinger's opinion as insufficient, the Director effectively required Safeway to "disprove causality with an absolute certainty" which we have said is too heavy a burden to place upon the employer to rebut the presumption of compensability. *See Washington Hosp. Ctr.*, 744 A.2d at 1000; *see also Washington Hosp. Ctr. v. District of Columbia Dep't of Employment Servs.*, 746 A.2d 278, 281–82 (D.C.2000) (reversing Director's decision where examiner failed to account for "significant parts" of testimony by employer's physician which was

**4.** Safeway also claims that Dr. Quraishi's reports indicate pre-existing conditions with Watson's right knee as a result of a basketball injury, but that the examiner never considered these findings because of errors in the admission of certain exhibits, see *supra* note 3, and that this alone requires the case to be remanded for proper consideration. In view of our disposition, we need not consider Safeway's contention that Dr. Quraishi's reports satisfied its burden or that their omission requires reversal. Safeway has the opportunity to present Dr. Quraishi's reports to the examiner on remand.

evidence sufficient to rebut the presumption); *cf. Parodi v. District of Columbia Dep't of Employment Servs.*, 560 A.2d 524, 526 (D.C.1989) (affirming Director's decision where employer's medical evidence not only failed to rebut the presumption but was consistent with the employee's medical evidence). It is sufficient for the employer to present substantial medical evidence—as opposed to unequivocal medical evidence—to rebut the statutory presumption. We therefore reverse and remand so that the examiner can proceed to the second step in the consideration of all evidence, giving due weight to the opinion of the treating physician.

### III.

■ We briefly address Safeway's other claims, which we summarily reject. Safeway argues that the Director's decision affirming the examiner's findings on the percentage of permanent partial impairment to Watson's left knee is not supported by substantial evidence because: (1) Watson has not reached maximum medical improvement, (2) Dr. Dorn's conclusions were "based on a faulty understanding of Watson's medical history," and substantial evidence did not support the examiner's apportionment in light of the medical opinions of Dr. Fechter and Dr. Danzinger, and (3) the hearing examiner failed to "credit" Safeway for any permanent impairment to Watson's left knee caused by the previous injuries not related to his employment at Safeway.

Dr. Dorn's reports support the examiner's finding that Watson has reached maximum medical improvement, as he consistently opined that the condition of the left knee was permanent and stationary. His suggestion that total knee replacement surgery would be required in the future does not affect this determination as that reasoning was largely based on Watson's age; Dr. Dorn sought to put off the surgery until Watson was at least fifty years

old so that a knee replacement would last through Watson's lifetime. Even medical evidence submitted by Safeway in the form of Dr. Danzinger's reports expressly concedes that Watson has reached maximum medical improvement.

■ The examiner adopted Dr. Dorn's estimate that Watson's left knee was eighty percent impaired (two thirds resulting from the work injury at issue), over the differing medical opinions of Dr. Fechter, who estimated a sixty-nine percent impairment to the lower left extremity (approximately half resulting from the work injury), and Dr. Danzinger, who estimated a thirty percent impairment (one fourth resulting from the work injury). An examiner need not specify why it credits one opinion over another, but "when a party questions the fundamental factual bases for an expert opinion, the Hearing Examiner must offer some explanation for why the expert's conclusions are nonetheless credible." *Spartin v. District of Columbia Dep't of Employment Servs.*, 584 A.2d 564, 571 (D.C.1990). Before the hearing examiner Safeway never questioned the factual foundation of Dr. Dorn's opinion or suggested that he was somehow unaware of the extent of Watson's prior medical history. It is not entirely clear from the record whether Dr. Dorn was fully aware of Watson's entire medical history, but the examiner relied on this doctor's opinion in light of the preference given to a treating physician, *see Pro–Football, Inc. v. District of Columbia Dep't of Employment Servs.*, 782 A.2d 735, 740 (D.C.2001), and on Dr. Dorn's extensive treatment of Watson over a period of more than a year. In the absence of a challenge to the factual basis of Dr. Dorn's opinion, we conclude that the hearing examiner's decision to credit Dr. Dorn's determination is supported by substantial evidence.

Finally, we are not persuaded by Safeway's argument that either the Director erred in failing to give it credit for that percentage of the permanent impairment caused by Watson's prior work injury in 1990, or that some sort of unjust enrichment theory applies to discount Watson's claim. The examiner's award of benefits based on the full eighty percent disability, even if one-third of his disability was due to an earlier injury, is consistent with the relevant provisions of the Workers' Compensation Act, which provide that:

> If an employee receives an injury, which combined with a previous occupational injury or nonoccupational disability or physical impairment causes substantially greater disability or death, the liability of the employer shall be as if the subsequent injury alone caused the subsequent amount of disability and shall be the payment of:
>
> (i) All medical expenses;
>
> (ii) All monetary benefits for temporary total or partial injuries; and;
>
> (iii) Monetary benefits for permanent total or partial injuries up to 104 weeks.

D.C.Code § 36–308(6)(A) (1998), recodified at D.C.Code § 32–1508 (2001). The statute further provides that in cases of disability awards for successive injuries, a "special fund shall reimburse the employer solely for the monetary benefits paid for permanent total or partial injuries after 104 weeks." D.C.Code § 36–308(6)(B). Under District law, therefore, there is no apportionment or "credit" for pre-existing injury. Instead, the "special fund" provides reimbursement to an employer to limit its exposure while affording the injured employee full coverage for the combined effect of successive injuries. *See Washington Metropolitan Area Transit Authority (WMATA) v. District of Columbia Dep't of Employment Servs.*, 704 A.2d 295, 297 (D.C.1997).[5]

We have applied a credit to an employer's liability for workers' compensation benefits based on principles of unjust enrichment where the injured employee has been otherwise compensated for the same injury. *See 4934, Inc. v. District of Columbia Dep't of Employment Servs.*, 605 A.2d 50, 55 (D.C.1992) (employer entitled to credit for $30,000 gratuitous payment made by government of Brazil to claimant for work-related injury). Safeway claimed that it was entitled to a credit of twenty-eight percent—the percentage of the disability it says was owing to Watson's 1990 work injury. Watson had filed a claim for benefits in Maryland related to that injury, and settled with his employer for $7000. Both the hearing examiner's compensation order and the Director's decision are silent on the issue, presumably because Safeway's request for a "credit" of the percentage of the disability attributable to Watson's pre-existing injury was tantamount to apportionment, contrary to D.C. law. Many factors can influence a party's decision to settle, and the amount of settlement. Here there is no evidence of a correlation between the $7000 amount for which Watson settled his prior claim and the credit of twenty-eight percent Safeway requested. Therefore, the basis for applying unjust enrichment theory here, that "as between the two persons, it is unjust for [Watson] to retain" the benefits, or that he would have received a "double recovery," has not been established. *Id.* at 56. In light of Safeway's request for a twenty-eight percent credit and the dearth of evidence or any fact-finding concerning the settlement, we perceive no error in the

**5.** We express no opinion on Safeway's eligibility for reimbursement from the special fund. *See WMATA,* 704 A.2d at 298 (noting that "eligibility for Special Fund reimbursement is to be based on whether the employee's pre-existing disability was manifest to the employer at any time prior to the compensable injury").

agency's implicit rejection of Safeway's request for a twenty-eight percent credit.

For the foregoing reasons, the agency's grant of benefits to Watson is

*Affirmed in part and reversed and remanded in part.*