THE WASHINGTON POST, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent,

Raymond Reynolds, Intervenor.

No. 01–AA–1478.

District of Columbia Court of Appeals.

Argued March 17, 2003.
Decided June 3, 2004.

David M. Schoenfeld, Gaithersburg, MD, with whom John F. Ward was on the brief, for petitioner.

Matthew J. Peffer with whom Benjamin T. Boscolo, Greenbelt, MD, was on the brief, for intervenor.

Arabella W. Teal, Corporation Counsel at the time the statement was filed, and Charles L. Reischel, Deputy Corporation Counsel at the time the statement was filed, filed a statement in lieu of brief for respondent.

Before RUIZ and GLICKMAN, Associate Judges, and BELSON, Senior Judge.

GLICKMAN, Associate J.

This appeal presents a single issue that recurs frequently in our workers' compensation cases: whether an employer has presented sufficient evidence to overcome the statutory presumption of a causal relationship between an employee's disability and an injury the employee sustained at work. We hold that an employer has met its burden to rebut the presumption of causation when it has proffered a qualified independent medical expert who, having examined the employee and reviewed the employee's medical records, renders an unambiguous opinion that the work injury did not contribute to the disability. The petitioner in this case, The Washington Post, presented such an expert opinion regarding the disability claim of its employee, the intervenor Raymond Reynolds. We therefore remand for the administrative law judge, as the trier of fact, to weigh the conflicting evidence on causation and resolve the issue anew without relying on the statutory presumption.

I.

It is useful to begin by describing the applicable legal framework. The District of Columbia Workers' Compensation Act provides, in pertinent part, that "[i]n any proceeding for the enforcement of a claim for compensation ... *it shall be presumed, in the absence of evidence to the contrary* ... [t]hat the claim comes within the provisions of this chapter...." D.C.Code § 32–1521(1) (2001) (emphasis added). This statutory presumption is "designed to effectuate the humanitarian purposes of the statute [and] reflects a strong legislative policy favoring awards in arguable cases." *Ferreira v. District of*

Columbia Dep't of Employment Servs., 531 A.2d 651, 655 (D.C.1987) (internal quotation marks and citations omitted). To invoke the presumption, an employee seeking compensation merely has to present "some evidence" of "a work-related event, activity, or requirement which has the *potential* of resulting in or contributing to" the employee's disability. *Id.* (emphasis in the original). Upon that minimal showing, the statutory presumption "operates to establish a causal connection between the disability and the work-related event, activity, or requirement," such that the disability is compensable. *Id.*

■ This presumption operates, though, only "in the absence of evidence to the contrary." D.C.Code § 32–1521. "Once the presumption is triggered, the burden is upon the employer to bring forth 'substantial evidence' showing that death or disability did not arise out of and in the course of employment." *Ferreira*, 531 A.2d at 655 (citation omitted). The employer's evidence simply needs to be "specific and comprehensive enough," *id.* (citation omitted), that "a reasonable mind might accept [it] as adequate"[1] to contradict the presumed causal connection between the event at work and the employee's subsequent disability. *See, e.g., Safeway Stores, Inc. v. District of Columbia Dep't of Employment Servs.*, 806 A.2d 1214, 1219–20 (D.C.2002). Accordingly, while we have said that "[t]he presumption of compensability cannot be overcome merely 'by some isolated evidence,'" *Whittaker v. District of Columbia Dep't of Employment Servs.*, 668 A.2d 844, 847 (D.C.1995) (citation omitted), neither is the presumption "so strong as to require the employer to prove that causation is *impossible* in order to rebut it." *Washington Hosp. Ctr. v. District of Columbia*

Dep't of Employment Servs., 744 A.2d 992, 1000 (D.C.2000) (emphasis in the original).

■ If the employer succeeds in proffering substantial evidence of non-causation, the statutory presumption drops out of the case entirely. The burden then reverts to the claimant to prove by a preponderance of the evidence, without the aid of the presumption, that a work-related injury caused or contributed to his or her disability. *See Washington Hosp. Ctr.*, 744 A.2d at 998.

## II.

Raymond Reynolds, a mail room employee of The Washington Post, filed a Workers' Compensation Act claim for temporary total disability benefits. Reynolds claimed that he was disabled from September 1996 through March 1997 because an injury that he sustained at work a year earlier, in September 1995, had aggravated a pre-existing arthritic condition in his left knee. The Washington Post contested the claim. The single disputed issue at the ensuing evidentiary hearing was whether Reynolds' disability was causally related to his September 1995 injury. We state the material facts as the hearing examiner found them.

The first time Reynolds suffered an injury to his left knee was in January 1994. That injury caused Reynolds to miss two months of work in 1994 and to remain under the care of an orthopedic surgeon until May 1995. The injury that is the subject of this case occurred on September 9, 1995, when Reynolds jumped off a forklift in an effort to prevent a pallet of waste newspapers from tipping over. Reynolds heard and felt a "popping" in his left knee.

---

1.  *Stewart v. District of Columbia Dep't of Employment Servs.*, 606 A.2d 1350, 1351 (D.C. 1992) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)).

He reported to the Employee Health Center, where a nurse treated the knee with ice. Following the incident, Reynolds returned to his regular work schedule. He did not miss work, and except for two subsequent visits to the Health Center for aspirin and ice packs to alleviate swelling and pain in the knee, he did not seek further medical treatment.[2]

Nine months later, in June of 1996, Reynolds suffered a disabling injury to his left shoulder. He was referred to Dr. John Starr, an orthopedic surgeon. In August, while he was still under Dr. Starr's care, Reynolds mentioned that he was experiencing pain in his left knee. Reynolds attributed his knee pain to the trauma he sustained when he jumped off the forklift in September 1995.

Dr. Starr ordered x-rays of the knee, and these were compared with x-rays taken following Reynolds' injury in 1994. Both sets of x-rays revealed that Reynolds suffered from an underlying degenerative condition known as osteochondritis dissecans in the medial femoral condyle of the knee. The new x-rays showed that the condition had deteriorated since 1994: there was additional calcification and other patellofemoral degenerative change. Dr. Kenneth Fine, an orthopedic surgeon and a knee specialist, recommended that Reynolds undergo an abrasion arthroscopy. Reynolds agreed to this procedure, which Dr. Fine performed in December 1996. During the surgery, Dr. Fine removed "loose bodies" of cartilage from the knee and performed a partial meniscectomy after discovering a complex tear of the medial meniscus. The surgery was followed by a course of physical therapy.

Reynolds' shoulder-related disability resolved itself by mid-September 1996, but because of his knee Reynolds remained disabled and unable to return to work full time until March 1997. It was for this six-month period that Reynolds claimed temporary total disability benefits under the Workers' Compensation Act.

The hearing examiner determined that Reynolds was entitled to invoke the presumption available under the Act of a causal relationship between his disability and the knee injury that he sustained on September 9, 1995. This causal relationship was supported, the examiner found, by Reynolds' testimony, the medical records of Drs. Starr and Fine, and a supplemental report in which Dr. Fine stated (though he did not explain his reasoning) that "to the best of my knowledge, this patient's [i.e., Reynolds'] injury was directly caused by the incident occurring at Mr. Reynolds' employment" on September 9, 1995. The burden shifted, the examiner ruled, to The Washington Post to present "substantial evidence, both specific and comprehensive enough, to sever the presumptive relationship" between Reynolds' disability and his injury at work.

To meet that burden, The Washington Post submitted the deposition testimony and written reports of Dr. Louis Levitt, a board certified orthopedic surgeon who had examined Reynolds and reviewed his pertinent medical records at the Post's behest. In his final report, Dr. Levitt noted initially that the evaluation of Reynolds' left knee pathology is "complicated. There are two injury events in question that contributed to his current knee pathology." These were the incidents in January 1994 and September 1995. After describing the two incidents, each of which involved a "twisting injury" that produced "mild pain and swelling," Dr. Levitt stated his firm opinion that neither one caused or

---

**2.** The hearing examiner discounted Reynolds' testimony, which Health Center records failed to corroborate, that he revisited the Health Center frequently after September 1995 on account of his knee.

contributed to Reynolds' disability. Rather, he said, Reynolds' disability was attributable solely to the natural progression of his pre-existing knee disease. Dr. Levitt explained his opinion as follows:

> [A]fter reviewing this case and evaluating Mr. Reynolds, there is no doubt that he has significant knee pathology.... [I]t is my opinion that his knee complaints are not work related. If either of the work traumas in 1/94 and in 9/95 had caused a significant injury to his knee and had further advanced his osteochondritic pathology, the patient would have sought treatment within a reasonable period of time. The natural history of his osteochondritic dissecans is to become symptomatic, particularly when one appreciates the extent of his knee pathology that was identified at the time of his arthroscopic procedure in 9/96. It was the irregular cartilage surfaces over the medial femoral condyle and tibial plateaus that caused the meniscal injury that was treated at the time of his surgery and not any previous work trauma.
>
> There is no question that Mr. Reynolds needed the surgery that was performed. The treatment provided and the extensive degenerative wear identified arthroscopically and radiographically is not the consequence of any previous work trauma.... Based on his examination today, Mr. Reynolds is fit to work, but given the extent of the arthritis to his left knee, it would be my recommendation that he avoid jobs that require frequent squatting and bending activities. The need to consider limiting any of his work responsibilities is not the result of any previous work trauma but represents the natural deterioration of a pre-existing knee disease.

In his deposition, Dr. Levitt reiterated these views. While the September 1995 incident resulted, he testified, in a "temporary irritation of the [knee] joint," the trauma did not "advance[ ] [Reynolds'] knee pathology or structurally change[ ] his knee in any manner." Dr. Levitt specifically discounted, "to a reasonable degree of medical certainty," the possibility (pressed by Reynolds' counsel) that Reynolds tore his medial meniscus in jumping off the forklift. Such a tear would have led, in Dr. Levitt's view, to more immediate symptoms than Reynolds experienced.

Unimpressed, the hearing examiner gave short shrift to what she dismissively characterized—without any explanation—as "Dr. Levitt's speculative and partial opinion." The opinion failed, the examiner concluded, to meet the employer's burden to present substantial evidence specific and comprehensive enough to dispel the statutory presumption of causation.[3] Relying on that presumption, the examiner found Reynold's disability to be work-related and granted his claim for benefits.

In upholding the award, the Director of the Department of Employment Services endorsed the examiner's description of Dr. Levitt's opinion as "speculative and partial." In justification of that characterization, the Director observed that notwithstanding his opinion on the lack of causation, Dr. Levitt had recommended that Reynolds avoid jobs requiring frequent squatting and bending. The Director also noted that Dr. Levitt had said that Reynolds' injury in September 1995

---

3. The hearing examiner also discounted the fact that Reynolds sought no medical treatment for his knee for eleven months. "In light of the nature of claimant's job which clearly places a strain on one's knees," the examiner reasoned, "claimant cannot be penalized for his decision to work and not seek treatment.... [A]ny other determination would result in harshness and would not effectuate the humanitarian purposes of the presumption...."

was one of "two injury events in question that contributed to his current knee pathology."

## III.

■ The Washington Post contends that the Director erred in affirming the examiner's ruling that its evidence was insufficient to rebut the statutory presumption of causation. The ruling "presents a question of law—what constitutes sufficient evidence—that we review *de novo.*" *Safeway Stores, Inc.,* 806 A.2d at 1219.

■ We agree with petitioner. Under this court's precedents, Dr. Levitt's reports and testimony indisputably constituted "substantial medical evidence-as opposed to unequivocal medical evidence—[sufficient] to rebut the statutory presumption." *Safeway Stores, Inc.,* 806 A.2d at 1221 (reversing Director's determination that an opinion of an·independent medical examiner retained by the employer did not overcome the presumption of compensability). We are at a loss to discern why the hearing examiner and the Director thought otherwise or why they dismissed Dr. Levitt's opinion on the absence of causation as "speculative and partial." It was neither. Dr. Levitt's professional qualifications were unquestioned. He based his opinion on his personal examination of Reynolds and his review of all the pertinent medical records. The doctor's opinion was firm and unambiguous. He supported it with detailed reasons. His reports and testimony were neither superficial nor implausible. Certainly they were "specific and comprehensive enough," *Ferreira,* 531 A.2d at 655, for the purpose at hand.

As purported justification for rejecting the sufficiency of Dr. Levitt's opinion, the Director cited only the doctor's recommendation that Reynolds avoid frequent squatting and bending and his statement that the September 1995 incident was one of "two injury events in question that contrib-

uted to his current knee pathology." The recommendation is, however, consistent with Dr. Levitt's view that Reynolds indeed was suffering from a degenerative knee condition, though that condition was not attributable to or aggravated by his injury. As to the sentence excerpted from Dr. Levitt's final report, it is infelicitously phrased, but to treat it as anything more, as undermining or qualifying Dr. Levitt's opinion, is—beyond doubt—to take it out of context and misread it. "[T]he inconsistency, if any, was minor, as the doctor unequivocally stated his opinion that the work injury was not the precipitating cause in this case...." *Safeway Stores, Inc.,* 806 A.2d at 1220.

In *Washington Metro. Area Transit Auth. (WMATA) v. District of Columbia Dep't of Employment Servs.,* 827 A.2d 35 (D.C.2003), we held that a doctor's opinion was insufficient to rebut the presumption of causation. In that case, however, unlike in this one, the doctor failed to review the pertinent medical records; he based his opinion on a factual error that reading the records would have prevented, and he then made a critical admission in his deposition that further undermined his opinion. *See id.* at 42–44. For those specific reasons we had no difficulty concluding that the doctor's testimony did "not amount to 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'; and [was] not 'specific and comprehensive enough to sever the potential connection between [the employee's] disability and [his] work-related [injury].'" *Id.* at 44 (citation omitted). The contrast with the present case is stark.

■ The statutory presumption was rebutted here. We reverse the decision of the Director and remand for the administrative law judge to weigh the conflicting

evidence of causation without relying on the presumption.[4]

*So ordered.*

---

**4.** The Washington Post raises one other claim, that the hearing examiner erred by considering medical evidence submitted after the evidentiary hearing, which we dispose of summarily. At the conclusion of the hearing, the examiner allowed the record to remain open to permit Reynolds to submit a supplemental report from Dr. Fine. When invited to state his position on that procedure, the opposing counsel stated that "I'm just going to note an objection and not make an argument." Petitioner never argued to the examiner or the Director that the supplemental report was inadmissible. Nor did petitioner seek other relief, such as the opportunity to depose Dr. Fine or to reopen the hearing. Under these circumstances, petitioner has not preserved the claim it now asserts; for as a general rule a party is obliged to make its objection to the admission of evidence "promptly *and specifically,* at a time when it might be possible for the opposing party to meet its force or for the trial court to cure any omission or error." *Wagner v. Georgetown Univ. Med. Ctr.,* 768 A.2d 546, 563 (D.C.2001) (internal quotation marks and citations omitted) (emphasis added).