Rebecca JACKSON, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF EMPLOYMENT SER-
VICES, Respondent,

and

Baptist Senior Adult Ministries

and

Liberty Mutual Insurance
Group, Intervenors.

No. 07–AA–952.

District of Columbia Court of Appeals.

Submitted June 30, 2008.
Decided Aug. 27, 2009.

Michael D. Dobbs was on the brief for petitioner.

Linda Singer, Attorney General for the District of Columbia at the time the statement was filed, Todd S. Kim, Solicitor General, Donna M. Murasky, Deputy Solicitor General, and William J. Earl, Senior Assistant Attorney General, filed a statement in lieu of brief for respondent.

Denise Adams Hill was on the brief for intervenors, Baptist Senior Adult Ministries and Liberty Mutual Insurance Group.

Before RUIZ and BLACKBURNE–RIGSBY, Associate Judges, and NEBEKER, Senior Judge.

BLACKBURNE–RIGSBY, Associate Judge:

The Compensation Review Board ("CRB") denied petitioner Rebecca Jackson's claim for worker's compensation benefits, thereby affirming the Administrative Law Judge's ("ALJ's") decision to deny benefits, based upon its conclusion that petitioner's claimed disability resulted from a pre-existing medical condition and was not causally connected to a work-related injury. On petition for review, petitioner contends that the CRB erred because the ALJ's findings were not supported by substantial evidence and were not in accordance with the law. We agree. Because we conclude on the particular facts of this case that the employer failed to rebut the presumption of compensability with substantial evidence, the petitioner's claim is compensable. Accordingly, we reverse.

## I. Factual and Procedural Background

Petitioner worked as a registered nurse for Baptist Senior Adult Ministries ("Baptist") at the Thomas House. Her job required that she be mobile and able to climb six stories of a ten-story building, as well as be able to get on her knees to

perform CPR. She had a history of severe stiffness in her knees and problems with her right knee in particular. Petitioner previously sought treatment from Drs. David C. Johnson and Clayton Straughn for pre-existing osteoarthritis in both of her knees and in her lumbar spine. Dr. Johnson prescribed a regimen of Hyalgan[1] injections in her knees. Despite her knee stiffness, petitioner never missed work prior to the November 19, 2003 work-related incident at issue.

On November 19, 2003, as petitioner walked to the nursing station at work, she caught her foot on the carpet and fell forward onto both knees. Thereafter, she began to experience pain in her back and knees, did not return to work, and was treated by Drs. Johnson and Straughn. In January 2004, petitioner underwent total right knee replacement surgery. On September 28, 2004—eight months after petitioner's surgery—Dr. Louis Levitt, Baptist's Independent Medical Examiner ("IME"), examined petitioner. Petitioner received voluntary payments of temporary total disability benefits from November 20, 2003 until March 6, 2004.

Petitioner sought an award of temporary total disability benefits from March 7, 2004 until the present, as well as continuing causally-related medical expenses and interest on accrued benefits.[2] The ALJ determined that petitioner's injury was not medically causally-related to the November 19, 2003 incident and denied petitioner's claim. The ALJ concluded that petitioner "presented sufficient evidence to invoke the presumption of compensability from March 7, 2004 [forward]" with regard to petitioner's right knee. The evidence—Dr. Johnson's November 24, 2003 report[3]—indicated that Dr. Johnson presented petitioner with several treatment options; she elected total knee replacement, which occurred on January 6, 2004. The ALJ also reviewed the reports of Drs. Johnson and Straughn "for compensation related to [petitioner's] back injury." She indicated that Dr. Straughn's report noted the "Date of Loss" as January 5, 2003, which was different from the date of petitioner's on-the-job injury—November 19, 2003—and accordingly refused to consider this medical report as proof of compensability for the back injury.[4] The ALJ did, however, credit two of Dr. Johnson's reports concerning petitioner's lower back pain,[5] and accordingly found that they in-

---

1. As the ALJ noted, "Hyalgan is the trademark for a preparation of hyaluronate sodium, a preparation obtained from chicken combs that is used as an analgesic in the treatment of osteoarthritis of the knee, administered by intra-articular injection."

2. On February 24, 2005, a formal hearing was held before ALJ Robert Middleton. ALJ Middleton left the agency before a decision was entered, however, and the matter was reassigned to ALJ Terri Thompson Mallett, who issued a decision and order denying compensation on June 5, 2006.

3. Dr. Johnson's treatment notes indicated that petitioner fell on her right knee at work, aggravating her symptoms significantly. He further noted that petitioner experienced progressive discomfort in her right knee because she had to do a lot of standing, walking, and climbing on the job.

4. Dr. Straughn's report stated that petitioner complained of lower back pain, that she had a decreased range of motion in her cervical spine with tenderness and spasms that presented on palpation, and that she had difficulty getting on and off the examination table due to her lower back pain.

5. While the ALJ dated the first report as December 13, 2003, the record suggests that the report to which she was referring was actually dated December 15, 2003. In that report, Dr. Johnson noted that petitioner came to him complaining of back pain and that she had fallen and injured her back on November 19, 2003. In the other report cited by the ALJ, dated March 24, 2004, Dr. Johnson not-

voked the presumption of compensability. With regard to petitioner's left knee, the ALJ stated that there was "insufficient evidence of a disability related to [petitioner]'s left knee for the claimed period—March 7, 2004 to the present and continuing."[6] Accordingly, she found that there was no presumption of compensability for petitioner's left knee.

Having found that petitioner had established the presumption of compensability for her right knee and back, the ALJ then examined the evidence to determine whether that presumption had been rebutted. Crediting Dr. Levitt's evaluation of petitioner, the ALJ noted that Dr. Levitt found that petitioner merely strained her back and temporarily exacerbated the pre-existing arthritis in her knees as a result of her on-the-job accident. According to the ALJ, Dr. Levitt's conclusion that petitioner's November 2003 fall "did not advance [petitioner]'s arthritis" rebutted the presumption of a causal connection between petitioner's on-the-job accident and her right knee condition. With regard to petitioner's lower back pain, Dr. Levitt opined that it was due to age-related back difficulties that may have been aggravated by the fall, but that these symptoms abated within a month after petitioner's fall. The ALJ found this evidence insufficient to sever the presumption of compensability for the back injury.

In light of all the evidence, the ALJ was not persuaded that petitioner's right knee condition was compensable. She specifically noted that Dr. Johnson's X-rays of petitioner's knee demonstrated that she suffered from bone-on-bone apposition[7] with arthritic changes. However, the ALJ found no reason to believe that petitioner's condition—as demonstrated by the x-rays—was causally related to her November 2003 fall. Further, she found that Dr. Johnson's report that petitioner "significantly aggravated" her prior symptoms was lacking because he failed to "provide [any] qualitative or quantitative distinction between [petitioner]'s pre-existing condition and her work-related injury."

On appeal, the CRB affirmed the finding that there was sufficient evidence to rebut the presumption of compensability with respect to the right knee, but reversed and remanded because it held that in weighing the evidence as a whole, the ALJ had erred in not giving appropriate weight to the treating physicians' evaluations. In finding sufficient evidence to rebut, the CRB noted that petitioner had failed to address why the IME's report was deficient under the standard set forth in *Washington Post v. District of Columbia Department of Employment Services*, 852 A.2d 909 (D.C.2004), which holds that an employer meets its burden to rebut the presumption of causation when it proffers a qualified IME who, after examining the employee and reviewing her medical records, unambiguously opines that the work injury did not contribute to the disability. Further, the CRB detected no infirmity in the IME's report under that standard.

Moving to the question of the appropriate weight to be accorded the treating physicians' opinions, the CRB concluded that the ALJ erred in not addressing the

---

ed that petitioner fell and injured her back on November 19, 2003 and that she still had constant pains in her back.

**6.** The ALJ noted that Dr. Johnson's December 23, 2003 report failed to relate symptoms with regard to her left knee to the November 2003 on-the-job injury.

**7.** In this context, "apposition" means "[t]he placing in contact of two ... structures." STEDMAN'S MEDICAL DICTIONARY 124 (28th ed.2006).

substance of Dr. Straughn's report due to her conclusion that Dr. Straughn meant "Date of Injury" where he noted the "Date of Loss" as January 5, 2003, instead of November 19, 2003. The CRB noted that in light of the rest of his reports, nothing other than the "Date of Loss" date suggested that Dr. Straughn was addressing anything other than the November 19, 2003 work-related incident. Furthermore, during the hearing, petitioner was neither cross-examined about some other similar incident nor confronted with the "Date of Loss" report, and opposing counsel did not object to these reports for lack of relevance. Thus, the CRB held that the factual finding that Dr. Straughn's opinion referred to some other incident was not supported by substantial evidence, and the decision not to consider the opinion was error. Accordingly, the CRB remanded, stating that Dr. Straughn's opinion must be considered.

Moreover, the CRB noted that the ALJ neither reconciled the opinions of Dr. Levitt vis-à-vis Dr. Johnson nor explained why she accorded more weight to the former. The CRB noted that while an ALJ can choose to credit the opinion of an IME over that of a treating physician, she must indicate the reasons both for crediting the IME's opinion and for discrediting the treating physician's. *See Canlas v. D.C. Dep't of Employment Servs.*, 723 A.2d 1210, 1211–12 (D.C.1999) (holding that there would be "little force" to the preference for the opinions of treating physicians if agencies could ignore those opinions without explanation). The CRB noted that by failing to articulate her reasons for departing from the preference for treating physician opinions, the ALJ appeared to be "substituting her own medical judgment for that of the physician." Citing this court's prohibition of the usurpation of the role of expert witnesses by administrative law judges,[8] the CRB remanded the case.

On remand, the ALJ again rejected the opinions of Drs. Straughn and Johnson and denied the claim. Again, the ALJ indicated that petitioner met her burden to invoke the presumption of compensability with regard to her right knee and lower back. She further held that notwithstanding the treating physician preference, the IME's report may be accorded greater weight. Citing *Erickson v. Wash. Metro. Area Transit Auth.*, H & AS No. 92–63, OWC No. 181489 (Oct. 28, 1993), aff'd Dir. Dkt. No. 93–82 (June 5, 1997), the ALJ noted that the treating physicians' reports may be rejected where they are sketchy, vague, and imprecise. She stated that IME opinions, on the other hand, may be accorded greater weight in cases where the IME personally examined the petitioner, reviewed all the available medical reports, and possessed "superior relevant professional experience and specialization." (citing *Canlas, supra,* 723 A.2d at 1210).

In stating her reasons for according Dr. Straughn's opinion regarding petitioner's back injury less weight, the ALJ noted that Dr. Straughn, a family practice physician, lacked expertise in orthopaedic medicine. Furthermore, Dr. Straughn noted the date of injury as January 5, 2003, and given that petitioner had never attempted to amend the date, that was the best evidence of the injury Dr. Straughn was treating. Moreover, Dr. Straughn provided petitioner with notes dated July 15, 2004 and January 31, 2005, and a letter dated February 19, 2005. The ALJ reasoned that these documents were not kept in the ordinary course of business, were

8. *Landesberg v. D.C. Dep't of Employment Servs.*, 794 A.2d 607, 614 (D.C.2002), abrogated on other grounds by *McCamey v. D.C. Dep't of Employment Servs.*, 947 A.2d 1191 (D.C.2008).

not accompanied by medical records indicating examinations near those dates, and were conclusory in nature, failing to present medical rationales for their conclusions.

The ALJ went on to note that "[a]lthough the report of Dr. Johnson is given greater weight than that of Dr. Levitt, it is not sufficient to find that [petitioner's] right knee condition as of December 23, 2003 was causally related to her work injury." Accordingly, the ALJ held that "there is insufficient medical evidence to conclude that [petitioner's] November 2003 trauma resulted in, or hastened her need for total right knee replacement." Although Dr. Johnson unequivocally stated that petitioner's on-the-job fall "significantly aggravated" her symptoms, the ALJ required more—"a qualitative or quantitative distinction between petitioner's pre-existing condition and her work-related injury." In finding that Dr. Johnson did not provide such a distinction, the ALJ pointed to several pieces of evidence. First, the ALJ cited evidence showing that petitioner had seen Dr. Johnson on December 15, 2003 primarily for lower back pain, and that the only reference to petitioner's right knee in the report from that examination was a statement that replacement surgery had been scheduled.[9] The ALJ concluded by inference that the light duty restrictions recommended by Dr. Johnson as a result of that visit were therefore related only to petitioner's back, not her right knee. Next, the ALJ cited a February 4, 2005 letter from Dr. Johnson to petitioner's counsel that stated:

[Petitioner] has a significant amount of arthritis in both of her knees, for which she underwent viscosupplementation as a temporizing measure prior to proceeding with the inevitable total knee replacement. After her last series of Hyalgan injections, her symptoms had improved sufficiently for her to return to work, but when she fell on 11/19/03, she aggravated her pre-existing knee arthritis and her low back.[10]

The ALJ noted that the letter did not describe petitioner's aggravated symptoms in relation to her pre-existing condition. Finally, the ALJ noted that while Dr. Johnson's letter had stated that petitioner's fall had worsened her symptoms and may have hastened petitioner's surgery, the letter also noted that petitioner's fall had not materially affected or worsened x-ray pictures of petitioner's knee. The ALJ paid short shrift to Dr. Johnson's November 24, 2003 report wherein Dr. Johnson stated, "[Petitioner] has fallen onto her right knee at work, and this has aggravated her symptoms significantly once again. . . . She is now ready to consider total knee replacement."

Petitioner appealed the remand order, which the CRB affirmed on June 5, 2007. The CRB noted that the ALJ's rejection of Dr. Straughn's opinions because they were not medical records "kept in the ordinary course of business" was unjustifiable, as the Federal Rules of Evidence do not apply to hearings under the Worker's Compensation Act. However, it found no reason to disturb the ALJ's rejection of Dr.

9. The ALJ's June 5, 2006 Compensation Order misstates Dr. Johnson's December 15, 2003 treatment note. Dr. Johnson never stated that petitioner's pre-existing arthritis was tied to her right knee. In fact, Dr. Johnson states, under the heading "IMPRESSIONS," "Osteoarthritis of the lumbar spine, with recent exacerbation of symptoms from a fall on 11/19/03; osteoarthritis left knee." Under the heading "PLAN," he goes on to state that petitioner "is scheduled for a *left* total knee replacement on 1/6/04." (emphasis added).

10. This letter was not made part of the record but is quoted in the ALJ's June 5, 2006 Compensation Order.

Straughn's opinion given the other stated reasons for doing so. It also concluded that the ALJ properly weighed the opinions of both Dr. Johnson and Dr. Levitt. The CRB held that the ALJ's finding "that Dr. Johnson's opinion buttressed Dr. Levitt's opinion" was supported by substantial evidence because of Dr. Johnson's opinion that petitioner's knee condition and knee replacement were due to pre-existing arthritis. As such, the CRB upheld the Compensation Order on Remand. Petitioner then timely sought review by this court.

## II. Analysis

We review the agency's factual findings to determine if they are supported by substantial evidence. If supported by substantial evidence, we must accept the findings, even if the record could support a contrary finding. Next, "we conduct a *de novo* review of an agency's legal conclusions." *Zhang v. D.C. Dep't of Consumer & Regulatory Affairs*, 834 A.2d 97, 101 (D.C.2003) (internal citation omitted). We do not disturb agency decisions that flow "rationally from findings of fact that are supported by substantial evidence on the record." *Id.* (citation omitted); *see also Ferreira v. D.C. Dep't of Employment Servs. (Ferreira II )*, 667 A.2d 310, 312 (D.C.1995) (indicating that when we review an agency decision, we look to whether "the agency has made a finding of fact on each material contested issue of fact; ... substantial evidence of record supports each finding; ... conclusions legally sufficient to support the decision flow rationally from the findings."). "Substantial evidence" is relevant evidence that "a reasonable mind might accept as adequate to support a conclusion." *Gross v. D.C. Dep't of Employment Servs.*, 826 A.2d 393, 395 (D.C.2003) (internal quotation marks and citations omitted).

Under the District of Columbia Workers' Compensation Act, when a claimant demonstrates a work-related event and a subsequent disability, there is a presumption that the claim comes within the provisions of the Act. D.C.Code § 36–321(1) (1998), recodified as D.C.Code § 32–1521 (2001); *see also Ferreira v. D.C. Dep't of Employment Servs. (Ferreira I )*, 531 A.2d 651, 655 (D.C.1987). In order to rebut the presumption, the employer must provide substantial evidence that the disability did not arise out of, in the course of, or was aggravated by, the employment. *Baker v. D.C. Dep't of Employment Servs.*, 611 A.2d 548, 550 (D.C.1992). Under our jurisprudence, there is a preference for the testimony of the treating physician's evaluation over the opinions of non-treating physicians. *Canlas, supra*, 723 A.2d at 1211–12. A hearing examiner may reject the testimony of a treating physician, but only where she has explicitly addressed the treating physician's testimony and explained why it is rejected. *Lincoln Hockey LLC v. D.C. Dep't of Employment Servs.*, 831 A.2d 913, 919 (D.C.2003) (citing *Canlas, supra*, 723 A.2d at 1212). However, there must still be substantial evidence sufficient to rebut the presumption of causation or aggravation. *See Wash. Metro. Area Transit Auth. v. D.C. Dep't of Employment Servs. (WMATA )*, 827 A.2d 35, 44 (D.C.2003). We have held that "an aggravation of a preexisting condition may constitute a compensable accidental injury under the Act." *Ferreira I, supra*, 531 A.2d at 660 (citation omitted) (holding that a specific traumatic, work-related event was not a prerequisite to find that a preexisting condition had been aggravated); *see also Ferreira II, supra*, 667 A.2d at 312–13 (noting that "aggravation of a preexisting condition may constitute a compensable accidental injury under the [Workers' Compensation] Act." (citation and internal quotation marks omitted)).

Once the claimant proves aggravation, the presumption of compensability is applied "to establish the causal connection necessary to prove a compensable claim." *Clark v. D.C. Dep't of Employment Servs.*, 772 A.2d 198, 202 (D.C.2001) (citation omitted). When the presumption has been established, the burden then shifts to the employer. *Parodi v. D.C. Dep't of Employment Servs.*, 560 A.2d 524, 526 (D.C. 1989) (citing *Ferreira I, supra*, 531 A.2d at 655 & n. 5). In order to rebut the presumption, "the employer must show by substantial evidence that the disability did not arise out of and in the course of the employment." *Baker, supra*, 611 A.2d at 550 (citation omitted); *see also Clark, supra*, 772 A.2d at 202–03 ("The presumption may be rebutted by evidence specific and comprehensive enough to sever the causal connection." (citation omitted)). Where an employer fails to provide such evidence, "the compensation claim will be deemed to fall within the purview of the statute." *Parodi, supra*, 560 A.2d at 526 (citing *Ferreira I*, 531 A.2d at 655).

■ As we have stated, the issue of the sufficiency of evidence needed to rebut the presumption of compensability "recurs frequently in our workers' compensation cases. . . ." *Wash. Post, supra*, 852 A.2d at 910. An employer need not prove that the employee's injury "could not" have been caused by a work-related incident. *Safeway Stores, Inc. v. D.C. Dep't of Employment Servs.*, 806 A.2d 1214, 1220 (D.C. 2002) (quoting *Wash. Hosp. Ctr. v. D.C. Dep't of Employment Servs.*, 744 A.2d 992, 999–1000 (D.C.2000)). Rather, an employer need only offer "substantial evidence both specific and comprehensive on the question of a causal relationship between the disability alleged and the injury" such that it "sever[s] the potential connection between the disability and the work-related event." *WMATA, supra*, 827 A.2d at 42 (quoting *Safeway Stores, supra*, 806 A.2d at 1219) (internal quotation marks omitted).

In *WMATA*, we addressed a situation similar to the instant case. We held that there was no substantial evidence to support rebuttal of the presumption because (1) the IME had failed to consider all of the post-incident medical reports of the employee's treating physician, which showed persistent knee pain; (2) the IME's insistence that there were no early complaints of knee pain ignored the employee's on-the-job accident report and the emergency room records, which indicated knee pain; and (3) the IME had conceded that an arthritic knee like the employee's was susceptible to tearing and aggravation. *WMATA, supra*, 827 A.2d at 43–44.

Here, as in *WMATA*, the IME—Dr. Levitt—did not take into full account Dr. Johnson's report of petitioner's changed position with regard to knee replacement surgery for her right knee.[11] Dr. Johnson's November 24, 2003 report stated:

> She has fallen onto her right knee at work, and this has aggravated her symptoms significantly once again. Nevertheless, she has been experiencing a progressive discomfort in her right knee at work, because her job requires her to do a lot of standing, walking, and climbing. She is *now* ready to consider total knee replacement, and wanted to discuss this further at this time.
>
> (emphasis added).

---

11. Unlike in *WMATA*, the record here indicates that Dr. Levitt reviewed all of Dr. Johnson's reports. However, it appears that he overlooked or misunderstood the fact that petitioner had not scheduled knee replacement surgery on her right knee until after the work incident aggravated her knee condition.

Dr. Johnson's report clearly indicates that petitioner's desire to schedule knee replacement surgery was prompted by her fall on November 19, 2003. Dr. Levitt's September 28, 2004 report, on the other hand, states petitioner's knee surgery had been scheduled prior to petitioner's fall at work:

> What complicates the case is that she was known to have established osteoarthritis to both knees. She was followed for this arthritis by her personal orthopedist, Dr. David Johnson. *In fact, she had been scheduled for a total knee replacement in January 2004. She followed up with Dr. Johnson after the trip and fall event and went ahead with the scheduled joint replacement in January to her right knee.*
>
> . . .
>
> She slipped and fell at work in 11/03 and she sustained what appears to have been a simple muscular strain to her back and a temporary exacerbation of preexisting arthritis to the knees into a symptomatic state. I want to make it clear from the outset of this exam that all of her knee treatments, including total knee replacement and subsequent arthroscopy to the left knee, represent preexisting disease that is well established by the patient report and in the medical records. I do not believe the fall at work in 11/03 did anything to advance her arthritis or make her symptoms worse *or alter the course that was already pre-planned for her knees prior to 11/03.*
>
> (emphasis added).

By premising his conclusion that the fall did not aggravate petitioner's right knee condition on his misunderstanding that petitioner had been scheduled for knee replacement surgery prior to her on-the-job fall, Dr. Levitt's report failed to take into account Dr. Johnson's report that petitioner had changed her position with regard to knee replacement surgery, because the fall aggravated the condition of her knee.

■ Secondly, Dr. Levitt's insistence that petitioner's fall did nothing to "alter the course that was already pre-planned for her knees prior to 11/03" ignores Dr. Johnson's report that petitioner was only willing to schedule right knee replacement surgery after her fall. Dr. Levitt's conclusions are therefore similar to the conclusions of the IME in the *WMATA* case, as both were contrary to prior medical reports. Dr. Levitt's opinion offered to rebut the presumption was based on a mistake or misunderstanding of a critical fact that he relied on to form his opinion—that because of symptoms of her existing knee condition petitioner had scheduled her knee replacement surgery *prior* to her work-related fall. That mistake of fact led Dr. Levitt to conclude that the fall at work did not significantly alter petitioner's condition or the predetermined treatment, and therefore no compensable aggravation of her pre-existing knee injury occurred. This was insufficient to rebut the presumption, which was supported by the treating physician, Dr. Johnson's opinion, that the fall aggravated petitioner's existing knee condition, necessitating her knee replacement surgery, which had been discussed, but not deemed necessary for petitioner until the injuries she sustained from the fall at work.

■ Dr. Johnson's medical reports were supported by his ongoing treatment and examination of petitioner as well as petitioner's statements to him where she indicated that she "wasn't thinking seriously about [knee replacement surgery]" until *after* the accident. Thus, Dr. Levitt's failure to consider Dr. Johnson's report regarding the causal connection between the fall at work and the aggravation of petitioner's right knee injury, which resulted in her changed position with regard to

knee replacement surgery and Dr. Levitt's insistence that petitioner's fall did nothing to alter her "planned course of treatment" ignored evidence from the treating physician's records that the fall significantly aggravated petitioner's osteoarthritis. As such, Dr. Levitt's report does not rise to the level of " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'; and is not 'specific and comprehensive enough to sever the potential connection between [petitioner's] disability and [her] work-related [fall on November 19, 2003].' " *WMATA, supra,* 827 A.2d at 44 (quoting *Safeway Stores v. D.C. Dep't of Employment Servs.,* 806 A.2d 1214, 1219 (D.C.2002) (holding that a non-treating physician's conclusion that there were no complaints of knee pain was not substantial evidence to rebut the presumption where he ignored, without explanation, the initial injury report and hospital records, which identified the knee pain)).[12] Accordingly, where, as here, "the presumption of compensability is not rebutted, 'the compensation claim will be deemed to fall within the purview of the statute,' and the [petitioner] is entitled to compensation." *Mexicano v. D.C. Dep't of Employment Servs.,* 806 A.2d 198, 206 (D.C.2002) (citation omitted).

*Reversed.*

---

**12.** Dr. Levitt's examination of petitioner, which tested the state of petitioner's knee eight months *following* the replacement surgery, provided no information as to the condition of her knee *before* the workplace accident. The only evidence on that issue, *i.e.,* Dr. Johnson's report, left no doubt that it was the aggravation caused by the workplace accident that changed petitioner's mind about the need for knee replacement surgery. Dr. Levitt's opinion does not satisfy the standard we enunciated in *Washington Post, supra.* There, we held that "an employer has met its burden to rebut the presumption of causation when it has proffered a qualified independent medical expert who, having examined the employee and reviewed the employee's medical records, renders an unambiguous opinion that the work injury did not contribute to the disability." *Wash. Post, supra,* 852 A.2d at 910. Dr. Levitt's opinion does not fit those criteria, because his opinion failed to take into account petitioner's changed position with regard to knee replacement surgery, as reflected in her medical records.