*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 19-AA-350

YUL HILL, PETITIONER,

V.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY, INTERVENOR.

On Petition for Review of a Decision and
Order of the Compensation Review Board of the
District of Columbia Department of Employment Services
(CRB-19-023)

(Submitted March 26, 2020                    Decided April 28, 2020)[*]

*Krista N. DeSmyter* and *Kevin H. Stillman* filed a brief for Petitioner.

*Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKha*n, Solicitor General at the time the statement was filed, *Carl J. Schifferle*, Acting Deputy Solicitor General, and *Sonya L. Lebsack*, Assistant Attorney General, filed a statement in lieu of brief for Respondent.

*Sarah O. Rollman* and *Mark H. Dho* filed a brief for Intervenor.

---

[*] The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published upon the court's grant of Intervenor's motion to publish.

Before GLICKMAN, FISHER, and MCLEESE, *Associate Judges.*

FISHER, *Associate Judge*:   Petitioner Yul Hill seeks review of a Compensation Review Board (CRB) order which affirmed an Administrative Law Judge's (ALJ) decision to deny petitioner's claim for temporary total disability benefits relating to a mental-mental injury.[1]  We hereby affirm.

## I.  Facts and Procedural Background

Mr. Hill began working as a bus operator for the Washington Metropolitan Area Transit Authority (WMATA) in 2009.  While on duty on February 1, 2013, he suffered physical and mental injuries when he was attacked by a passenger. After the attack, he received treatment[2] and eventually returned to full duty as a

---

[1]  "In physical-mental cases, the claimant alleges that a physical workplace injury caused a mental injury." *Muhammad v. District of Columbia Dep't of Emp't Servs.*, 34 A.3d 488, 492 n.4 (D.C. 2012).  "In mental-mental cases, the claimant alleges that an emotionally traumatic workplace event or stressor caused a mental injury." *Id*. at 492 n.5.

[2]  Dr. Joshua Sussal completed a psychiatric evaluation on April 4, 2013, and rendered a diagnosis of "Adjustment Disorder with Mixed Anxiety and Depressed Mood."  Dr. Sussal acknowledged that "[a]lthough superficially [petitioner] meets the criteria for PTSD his intent from 2010 with the lack of initiative to drive a bus in the first place coupled to his social issues with:  support, finances and dismay for the workers['] compensation system calls into question the integrity and magnitude of his subjective complaints."  Accordingly, Dr. Sussal "left PTSD as a rule out."  Mr. Hill also received treatment for his physical injuries from Dr. Taseem Malik, who referenced petitioner's anxiety.  Dr. Phyllis Braxton
(continued…)

bus operator. Petitioner's doctors opined that the mental health symptoms he experienced after the 2013 attack were also related to injuries he sustained in a 2010 accident. Dr. Sussal explained that, as in 2010, petitioner insisted that he would "be fine" if he could return to work in a "non-operator position."

In late February 2017, petitioner suffered the sudden and tragic loss of his son. Petitioner took three days of bereavement leave before returning to work at the beginning of March. On March 3, 2017, petitioner had a public disagreement with a supervisor which — the petitioner alleges — exacerbated his existing mental injury. The petitioner sought care through the Employee Assistance Program (EAP) and received a referral for mental health treatment. While at EAP, petitioner filled out a sick leave form but did not claim an on-the-job injury or file a claim for workers' compensation.

Mr. Hill's WMATA supervisor, Amit Tonse, regularly contacted Mr. Hill during his prolonged leave. Repeatedly, Mr. Hill explained that he was "stressed

_____
(…continued)
Arnason also counseled petitioner and submitted reports to petitioner's lawyers discussing Hill's treatment for "[a]djustment disorder with depression and anxiety."

out" because of his grief, without mentioning his discussions with the other supervisor. During his leave, Mr. Hill received mental health care from Therapist Alphonso Lewis to whom he had been referred by EAP. Therapist Lewis understood the reason for the referral to be petitioner's grief and opined that Mr. Hill's symptoms resulted from the traumatic loss of his son and his premature return to duty. However, after first observing symptoms on April 11, 2017, Therapist Lewis made a "definite diagnosis" of PTSD on May 16, 2017. On November 30, 2017, Therapist Lewis produced a clinical summary of his treatment of Mr. Hill for acute symptoms of anxiety and depression and symptoms of PTSD.

Therapist Lewis eventually advised Mr. Hill "that he should not operate a bus based upon the continued chronicity of the symptoms of his PTSD[,]" expressing a concern that allowing Hill to return to work as a bus operator "could potentially place him and the public at risk." Lewis also shared this information with WMATA. Consequently, in a letter dated September 27, 2017, WMATA permanently disqualified Mr. Hill from operating a bus due to his "post-traumatic stress disorder," effective June 20, 2017. According to petitioner, "[a]s of February 10, 2018, [WMATA] provided him with alternative employment outside of bus operation."

On September 26, 2017, petitioner filed for temporary total disability benefits and corresponding interest for the period of March 4, 2017, to February 9, 2018, stemming from the March 3, 2017, incident. This claim was later consolidated with a claim for temporary total disability and interest for the same period resulting from the September 2013 attack. Petitioner included a claim for payment of medical expenses from February 1, 2013, through December 6, 2017.[3]

On December 6, 2017, Dr. Cynthia Major-Lewis conducted an independent medical evaluation (IME) of Mr. Hill, during which she reviewed his medical records and conducted a mental health examination. Dr. Major-Lewis concluded that (1) Mr. Hill's PTSD diagnosis resulting from the 2013 attack was "pre-mature and incorrect," (2) Mr. Hill's resolving "[a]djustment [d]isorder with mixed anxiety and depression" symptoms was related to "non-work-related bereavement," and (3) there "is no chronic condition that should be considered employment related." In reference to the PTSD diagnosis, Dr. Major-Lewis explained that "[Therapist] Lewis did not document the symptoms required to make a DSM-V diagnosis of Posttraumatic Stress Disorder."

---

[3] Petitioner's original claim also included a claim for temporary partial disability payments for the period after February 9, 2018. This claim was withdrawn after a post-hearing review of Mr. Hill's pay records.

An ALJ heard evidence on July 11, 2018. At the hearing, intervenor argued that there was no medical causal connection between petitioner's current symptoms and *either* the 2013 attack or the March 2017 incident. Intervenor relied primarily on the IME report to argue against medical causality. Intervenor further explained that, even if the ALJ found a compensable injury resulting from the March 2017 incident, relief should nevertheless be denied because petitioner did not give timely notice of a workplace injury. Finally, with regard to the payment of temporary total disability benefits, intervenor asserted that it was entitled to a credit for the payment of long term disability benefits[4] that had occurred between September 4, 2017, and April 30, 2018.

In reference to the 2013 attack, the ALJ concluded that (1) Mr. Hill invoked the presumption of a medical-causal connection between the attack and his mental health complaints, (2) WMATA rebutted the presumption, and (3) Mr. Hill proved by a preponderance of the evidence "that there was a medical-causal connection between the 2013 attac[k] and his mental health complaints *until* December 6, 2017." The ALJ found that Mr. Hill did not invoke the presumption for the March

---

[4] Payments for which intervenor claims a credit relate to insurance payments made from the employer funded "Transit Employees' Health and Welfare Plan" provided by Hartford Life and Accident Insurance Company.

2017 incident. Despite his finding that there was medical-causality from March 4, 2017, until December 6, 2017, the ALJ denied *all* "temporary total disability benefits [and corresponding interest] from March 4, 2017 through February 9, 2018." The ALJ did not address intervenor's notice and credit arguments as both were rendered moot by the total denial of benefits.

Petitioner sought review of the compensation order (CO) from the CRB. The CRB affirmed the CO in part and remanded after concluding that there was not substantial evidence to support a finding that the claimant failed to invoke the presumption of compensability for the March 2017 incident. The CRB did not address the discrepancy between the ALJ's findings and his denial of relief stemming from the 2013 injury. On remand, the ALJ found that, while the claimant did successfully invoke the presumption, the employer severed the presumption with Dr. Major-Lewis's IME report. The claimant then failed to carry his burden to prove "that there is a medical-causal connection between the 2017 encounter with his supervisor and the allegedly-related mental health complaints." In an order issued on April 9, 2019, the CRB affirmed the Compensation Order on Remand and regarded its earlier rulings as the law of the case, acknowledging

petitioner's "arguments on appeal for preservation purposes and for further appeal to the District of Columbia Court of Appeals." Petitioner now seeks review.[5]

## II. Standard of Review

Petitioner argues that the underlying ALJ compensation orders were not based on substantial evidence. Specifically, he finds fault with the ALJ's reliance on Dr. Cynthia Major-Lewis's IME report.

"We affirm an administrative agency decision when (1) the agency made findings of fact on each contested material factual issue, (2) substantial evidence supports each finding, and (3) the agency's conclusions of law flow rationally from its findings of fact." *Bowles v. District of Columbia Dep't of Emp't Servs.*, 121 A.3d 1264, 1269 (D.C. 2015) (quoting *Georgetown Univ. v. District of Columbia*

---

[5] The CRB decision and partial remand order issued on December 5, 2018, was not a final order which this court had jurisdiction to review. *Warner v. District of Columbia Dep't of Emp't Servs.*, 587 A.2d 1091, 1093 (D.C. 1991) ("As a general matter, this court has jurisdiction to review only agency orders or decisions that are final."). On remand, the ALJ issued a Compensation Order on Remand that has since been affirmed by the CRB in a final Decision and Order. Because petitioner has exhausted his administrative remedies, both CRB orders are now ripe for review. *See Bender v. District of Columbia Dep't of Emp't Servs.*, 562 A.2d 1205, 1207 (D.C. 1989).

*Dep't of Emp't Servs.,* 971 A.2d 909, 915 (D.C. 2009)).  "Substantial evidence is 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Rodriguez v. Filene's Basement, Inc.*, 905 A.2d 177, 181 (D.C. 2006) (quoting *Gardner v. District of Columbia Dep't of Emp't Servs.*, 736 A.2d 1012, 1015 (D.C. 1999)).  "Although our review in a workers' compensation case is of the decision of the CRB, not that of the ALJ, 'we cannot ignore the compensation order which is the subject of the CRB's review.'"  *Reyes v. District of Columbia Dep't of Emp't Servs.*, 48 A.3d 159, 164 (D.C. 2012) (quoting *Georgetown Univ. Hosp. v. District of Columbia Dep't of Emp't Servs.,* 916 A.2d 149, 151 (D.C. 2007)).

### III.  Analysis

Under the workers' compensation framework, there is a statutory presumption in favor of finding a medical-causal connection after the claimant presents "some evidence of a work-related event, activity or requirement which has the potential of resulting in or contributing to" a disability.  *Wash. Post v. District of Columbia Dep't of Emp't Servs.*, 852 A.2d 909, 911 (D.C. 2004) (internal quotation marks omitted) (quoting *Ferreira v. District of Columbia Dep't of Emp't Servs.*, 531 A.2d 651, 655 (D.C. 1987)).  The employer may rebut that

presumption, at which time "the statutory presumption drops out of the case entirely" and the burden shifts back to the claimant, who must prove by a preponderance of the evidence that "a work-related injury caused or contributed to his or her disability." *Id.* at 911.

In this case, petitioner argues that the CRB erred in affirming the ALJ's finding that the employer presented medical evidence "specific and comprehensive" enough to rebut the presumption. Petitioner further argues that, even if the employer did successfully rebut the presumption, the ALJ erred by crediting the IME report of Dr. Major-Lewis over the opinions of petitioner's multiple physicians — including treating physician, Therapist Lewis — to conclude that the petitioner failed to carry his burden.

## A. Rebuttal Evidence

In order to rebut the presumption of compensability, "the burden is upon the employer to bring forth substantial evidence showing that death or disability did not arise out of and in the course of employment." *Wash. Post*, 852 A.2d at 911 (internal quotation marks omitted) (quoting *Ferreira*, 531 A.2d at 655). That is, the employer's evidence must be "specific and comprehensive enough to sever the

potential connection between a particular injury and a job-related event." *Jackson v. District of Columbia Dep't of Emp't Servs.*, 955 A.2d 728, 732 (D.C. 2008) (internal quotation marks omitted) (quoting *Parodi v. District of Columbia Dep't of Emp't Servs.*, 560 A.2d 524, 526 (D.C. 1989)). "It is sufficient for the employer to present substantial medical evidence — as opposed to unequivocal medical evidence — to rebut the statutory presumption." *Safeway Stores, Inc.*, *v. District of Columbia Dep't of Emp't Servs.*, 806 A.2d 1214, 1221 (D.C. 2002). *Compare Wash. Post*, 852 A.2d at 914 (defense medical report considered substantial evidence where a qualified physician examined the claimant, reviewed records, and rendered a clear and consistent opinion), *with Wash. Metro. Area Transit Auth. v. District of Columbia Dep't of Emp't Servs.*, 827 A.2d 35, 42-44 (D.C. 2003) (non-treating physician medical report not substantial evidence where the physician did not review treating physician records, provided only a vague opinion, and omitted key complaints).

In this case, the ALJ ultimately found (and the CRB affirmed) that WMATA successfully rebutted the presumption of medical causality for both the 2013 and 2017 injuries — primarily through the IME report of Dr. Major-Lewis. The IME report does not deny the existence of a mental health condition but unambiguously

states that "Mr. Hill's current symptoms are not related to his employment."[6]

There is no dispute as to Dr. Major-Lewis's qualifications as a board certified

psychiatrist licensed in Maryland. Before preparing her report, Dr. Major-Lewis

examined Mr. Hill and reviewed his medical records.[7]    The report is

comprehensive and gives specific reasoning to support her unambiguous

conclusion that petitioner's current mental health symptoms were not the result of

a work-related event but were an appropriate reaction to the sudden loss of his

---

[6]  While Dr. Major-Lewis does express disagreement with Therapist Lewis's PTSD diagnosis, there is no disagreement over the existence of a mental health condition.  The label applied to the condition is of little consequence in this case. In fact, the ALJ did not distinguish between the conditions, finding that Hill suffered from "PTSD *or* adjustment disorder."  The central issue to be resolved is whether or not there was a medical-causal connection between the symptoms and employment; a connection that the IME report definitively denies.

[7]  Petitioner claims that Dr. Major-Lewis's report was insufficient, in part, because she did not review the "treating mental health provider's records after October 10, 2017."  However, the only record from Therapist Lewis dated *after* October 10, 2017, is a clinical summary prepared on November 30, 2017.  The medical records do not suggest that an exam took place on November 30.  Rather, Therapist Lewis simply summarized his notes from prior exams.  The ALJ did not consider the counselor's clinical summary as a part of the medical record but rather as a document prepared for litigation. *See infra* note 11.  This court has recognized the danger of conscious and subconscious bias created by the potential for litigation. *Changkit v. District of Columbia Dep't of Emp't Servs.*, 994 A.2d 380, 387-88 (D.C. 2010).  As the hearing examiner, the ALJ retained discretion to evaluate the credibility of evidence.  The ALJ was acting within his discretion to discredit the November 30, 2017, clinical summary.

son.[8]  While Dr. Major-Lewis's report may not have constituted "unequivocal evidence," it met the substantial evidence burden to sever the presumption of medical causality between the work related events of 2013 and 2017 and the claimant's mental health complaints.

## B.  Claimant's Burden

In order to prevail after the employer has rebutted the presumption, the claimant must prove — by a preponderance of the evidence and without benefit of the presumption — "that a work-related injury caused or contributed to his or her disability."  *Wash. Post*, 852 A.2d at 911.  In reviewing the conclusions of the CRB we apply the same standard as the Board — substantial evidence review.

The ALJ found that the claimant failed to carry his burden to prove causality for his March 2017 injury.  In reaching this determination, the ALJ gave considerable weight to the IME report from Dr. Major-Lewis.  While the law of

---

[8]  "Mr. Hill continues to appropriately grieve the [death] of his son.  Mr. Hill's current symptoms are not related to his employment.  Most of his complaints are in the context of dissatisfaction with his employer and supervisor.  It is my medical and professional opinion that Mr. Hill's current symptoms, which are mild and vague, are not related to the 2/1/13 date of injury or the questionable 3/3/17 date of injury."

this jurisdiction "embodies 'a preference for the testimony of treating physicians over doctors retained for litigation purposes,' the hearing examiner nonetheless 'may choose to credit the testimony of a non-treating physician over a treating physician.'" *Canlas v. District of Columbia Dep't of Emp't Servs.*, 723 A.2d 1210, 1211-12 (D.C. 1999) (quoting *Short v. District of Columbia Dep't of Emp't Servs.*, 723 A.2d 845, 851 (D.C. 1998)). In so doing, the ALJ must explain his reasons for crediting the non-treating physician. *Changkit v. District of Columbia Dep't of Emp't Servs.*, 994 A.2d 380, 387-88 (D.C. 2010).

Both the ALJ's Compensation Order and the CRB's Decision and Partial Remand Order give specific reasons for crediting Dr. Major-Lewis's opinion over the opinion of the treating "physician" — Therapist Lewis.[9] The ALJ cited the fact that Dr. Major-Lewis conducted an "extensive review of the treatment records," cited to the DSM-V criteria,[10] and gave a clear opinion about the true nature of

_____

[9] Although not a doctor, Therapist Lewis (MHS, LCRC, NCC) is a licensed professional counselor. At the outset of the July 11, 2018, hearing, the parties agreed that Therapist Lewis should be considered the treating physician.

[10] Petitioner cites *Johnson v. District of Columbia Dep't of Emp't Servs.*, 167 A.3d 1237 (D.C. 2017), to support the proposition that Dr. Major-Lewis's report is insufficient in part because "a DME must identify their criteria for PTSD so that a tribunal can determine if the injured worker meets it in order to weigh the credibility of the defense medical evaluation." The facts in *Johnson* required the ALJ to distinguish between conflicting definitions of adjustment disorder and

(continued…)

petitioner's symptoms. The ALJ also found that Dr. Sussal's early reluctance to give a formal PTSD diagnosis tended to support Dr. Major-Lewis's later conclusion that the petitioner's resolved symptoms were more "akin to adjustment disorder."

Contrary to petitioner's contention, Dr. Major-Lewis's report did not stand alone in weighing against a finding of causality. In evaluating the evidence before him to determine if the March 2017 workplace disagreement exacerbated petitioner's mental injury, the ALJ correctly explained that credibility is "an inherent component of mental-mental disability claims." *See Ramey v. District of Columbia Dep't of Emp't Servs.*, 997 A.2d 694, 699-700 (D.C. 2010). The ALJ examined the documentary evidence and evaluated Mr. Hill's testimony before concluding that Hill's "characterization of the long-term emotional impact of his

_____

(…continued)
PTSD. In so doing, he relied on a definition of PTSD from a medical dictionary that had not been introduced into evidence. "[B]ecause neither party had introduced that definition into evidence, the definition related to a disputed factual matter, and neither party was given an opportunity to respond to the definition" this court held that the ALJ erred. *Id.* at 1242. Mr. Hill's case does not present a similar dispute over the definition of PTSD, nor did the ALJ take judicial notice of medical evidence outside the record. Instead, the ALJ considered the IME report along with the testimony of Mr. Hill, his supervisor, and a lengthy medical record before reaching a final determination.

encounter with his supervisor is incongruent with other compelling evidence."[11] The ALJ noted that petitioner, when contacted by Supervisor Tonse during his leave, made consistent statements about his grief — not the workplace incident. The ALJ also chose to discredit some documentation from Therapist Lewis as it "appear[ed] to have been prepared for litigation, which eliminates one of the reasons to defer to his opinion."[12] Accordingly, the ALJ concluded that petitioner's symptoms were the result of bereavement and not a workplace incident — a decision that the CRB affirmed. We agree with the CRB that the ALJ's determination was supported by substantial evidence.

---

[11] Under *Storey v. District of Columbia Dep't of Emp't Servs.*, 162 A.3d 793, 807 (D.C. 2017), an ALJ is not permitted to consider credibility when determining if the presumption has been invoked in cases of physical injury. However, nothing in *Storey* prohibits an ALJ from considering credibility when — as here — he is weighing the evidence to determine if the claimant has carried his burden by a preponderance. Nor does *Storey* prevent the ALJ from considering credibility when determining if the presumption has been invoked in cases of mental-mental injury. *Id.* at 803 (quoting *Ramey*, 997 A.2d at 699-700).

[12] The ALJ does not explain why he believed that the November 30 clinical summary was prepared for litigation. However, we note that the content and the timing of the summary support the ALJ's conclusion. The medical records do not indicate that Therapist Lewis conducted an exam on November 30. Instead, the clinical summary simply recounts Lewis's earlier notes. Further, the summary was completed *after* Mr. Hill initiated his claim on September 26, 2017, and contains the following note that appears to be intended for litigation purposes: "It is important to note that Mr. Hill was never referred to this office for any form of workman's compensation. His treatment was primarily for the symptoms of depression and anxiety. He continues to exhibit the acute symptoms of both. His primary psychiatric diagnosis remains Post Traumatic Stress Disorder."

### C. Insult as an Injury

Petitioner's final argument is that the ALJ and CRB erred by concluding that "Mr. Hill did not and could not have suffered an accidental mental injury on March 3, 2017." However, petitioner's brief misinterprets the language of the ALJ. In the CO, the ALJ explained, "being insulted is not, by itself, a mental injury. Mr. Hill might reasonably have resented her treatment of him, *but that was insufficient under the facts of this case to result in or aggravate* any of the mental health issues raised *in this case*." The ALJ did not assert that it was impossible for a worker to suffer an injury during a workplace incident similar to that of March 3; rather, the ALJ concluded that the evidence *in this case* was insufficient to show a medical-causal relationship between the insult and petitioner's symptoms. In other words, the petitioner failed to prove there was a compensable injury stemming from March 2017. For the reasons discussed in the previous section, we agree.

### IV. Conclusion

Because the CRB's order was supported by substantial evidence, it is hereby

*Affirmed.*